### TRUMAN KEYES *v.* MOSES HILL.

*Assumpsit for use and occupation.    Tenant in common.    Home-stead.*

In order to maintain assumpsit for use and occupation, the plaintiff must estab-lish the existence of the relation of tenancy between himself and the defend-ant.

The plaintiff being owner of the premises, the mere fact of occupancy by the defendant would be, *prima facie*, sufficient to create a presumption of such a relation. But this presumption may be rebutted by evidence to the con-trary, as, in this case, by the express refusal of the defendant to hold such a relation.

Keyes *v.* Hill.

If one tenant in common claim to recover for use and occupation of one, who sustains the relation of tenancy to him only by virtue of a demise of the whole premises from another tenant in common, the plaintiff thereby ratifies the demise; and if the rent has been paid to the tenant in common, making the demise, in accordance with its terms, the plaintiff can not recover.

Under the fourth section of the Homestead Law, Comp. Stat. chap. LXV, p. 391, after the decease of the housekeeper or head of the family, his widow has the right to hold, control, and enjoy the homestead as a home for herself, without restraint or abatement by any of the children of her deceased husband, who are not members of her family.

The clear design of the law is to continue the *homestead entire,* as the home of the widow, or of the widow and children constituting the family at the decease of the husband, and no rights of the children become operative to sever or divert such homestead from full occupancy and enjoyment, *as the family home,* so long as the widow, or widow and children, see fit to continue it as such family home.

ASSUMPSIT for use and occupation of a part of a house in St. Johnsbury. Plea, the general issue, and trial by the court at the December Term, 1857,—POLAND, J. presiding.

Dr. Calvin Jewett, of St. Johnsbury, died in December, 1853, leaving a widow and eight children. The children were all by a former marriage and they were all of full age, and had all resided away from the house of their father for some years, some of them in other states of the Union, and one of them in Turkey in Asia.

Dr. Jewett, at the time of his decease, owned a building lot in the village of St. Johnsbury, upon which was the dwelling house in question, and out-buildings, and he had resided in this house with his family for many years. The plaintiff and J. P. Fairbanks were appointed administrators on the estate of Dr. Jewett, and in March. 1855, they, with the assent of widow Jewett, made an arrangement with the defendant, who married her daughter by a former marriage, to take said premises and pay rent at the rate of sixty dollars per year till the estate should be settled, and the defendant entered into possession and occupied the place with the widow. In June, 1855, the administrators of Dr. Jewett settled their account, and the widow's dower, and also a homestead to the widow and children, were set out by order of the probate court. A part of the house was set out as dower to the widow, and the residue was set off as homestead. A part of the lot was not embraced

Keyes v. Hill.

in either homestead or dower, but was assigned to the heirs. After the homestead was set out there was some negotiation between the plaintiff (who acted for himself and the other heirs) and the widow Jewett and the defendant, about the heirs buying out the widow's share in the premises or of selling the interest of the heirs to the widow or the defendant, but it proved to be unavailing; whereupon the plaintiff notified the defendant that if he remained in possession of the premises, he must pay rent to the heirs, and the defendant told the plaintiff that the widow claimed the right to control and occupy the homestead, and if he remained he should occupy under her. The defendant paid rent to the plaintiff up to the time of the setting out the dower and homestead. He also occupied that portion of the premises not covered by the dower and homestead, until October, 1855, when he paid up for the rent for that also, and surrendered that part of the premises. The defendant made an arrangement with the widow Jewett to occupy that part of the premises set out as homestead, and occupied the same paying rent to her from the time the same was set out to the commencement of this suit, the widow claiming the right to use and occupy the same, as none of the children desired to reside there. The defendant paid the rent by boarding the widow, who continued to reside in the house with him during a portion of the time for which the plaintiff sought to recover, and during the residue, the defendant and his family boarded with Mrs. Jewett. The plaintiff was the husband of one of the daughters of Dr. Jewett, and he held the rights of all the other children, by virtue of conveyances from them to him, all of which he introduced in evidence.

Upon the above facts, the county court decided that the plaintiff was not entitled to recover, and rendered judgment for the defendant to which the plaintiff excepted.

*Slade & Edwards*, for the defendant.

It is not so important to determine to what class of old estates the homestead belongs, or whether it belongs to or is like any estate known to the common law, as it is to ascertain what estate the legislature intended to create, and for whose benefit it was intended. The incidents which attach to various other descriptions of estates for their protection, should not be applied to this, unless to protect

it, and certainly not if they defeat the object for which the estate was created.

The question here is, who is entitled to the rent and products of the homestead? and that raises the question, who is entitled to use, control and manage it. The question, as to who will ultimately own it, or how they will own it, when it ceases to be a homestead, is in no way involved, and should have no part in the discussion as to who shall control it while it is a homestead.

The act was passed for every housekeeper or head of a family, whether male or female, who owned or should acquire a house, out-buildings, and land appurtenant, and who occupy the same, and for none others. The homestead, and the yearly products of it, are exempt from execution. And where the housekeeper or head of a family is a married man, it cannot be alienated or incumbered, unless the conveyance or incumbrance be executed by the husband and wife jointly. The husband can alienate and mortgage all other lands. He can defeat his wife's right of dower, but he cannot destroy her home.

These are the qualities of the homestead, and the rights and privileges of the husband and wife, while they live and enjoy it. The fourth section of the act provides for the disposition of this homestead, in the event that the death of the husband occurs before that of the wife. If he leaves no widow, he leaves no homestead, because there would then be no housekeeper or head of a family left; but the homestead would be destroyed by his death. It is of no consequence, so far as perpetuating or destroying the homestead is concerned, whether he leave any children or not. But if he leaves a widow, then the homestead itself, with all its incidents, descends to her and the children, if there are any, to be occupied by them as a homestead, as in the lifetime of the husband. The provision that the homestead shall wholly pass to the widow and children, if any, in due course of descent, in order to harmonize with the provisions of the act, and the whole policy of this law, and the manifest intention of the legislature, must be construed to mean, in the due course of descent of an estate in homestead. That is, that this peculiar estate, created by the legislature for a specific and humane purpose, shall not, in such case, be interrupted or destroyed, but shall stand and remain to the widow, as

Keyes v. Hill.

the present head of the deceased family, as her homestead for herself and family still, wholly exempt from any interference by anybody whatever. This was one of the leading reasons that led to the passage of the act. The act is entitled " an act to *protect* the homestead."

But if it is to receive the construction claimed by the plaintiff, a more fitting title would have been " an act to perplex and destroy the homestead." If the plaintiff establishes his claim in this suit, it follows that these eight adult persons with their families may immediately move into this little homestead, consisting of a part of a small house and out-buildings worth five hundred dollars, and each occupy their eighth part, and their widows and their children after them may do the same; or that they may make partition and have nine distinct titles; and, if it cannot be divided, that she shall buy her homestead and pay them for it, whether she have the ability or not, or that she shall sell her part to them; or they may sell a part or all of it, or rent it to the most offensive persons: this would be most singular protection to the homestead. It seems monstrous that the legislature, under the guise of providing a homestead for a family to occupy, should, in fact, make provision that nearly five hundred dollars in value of the real estate of the deceased, should not be subject to the payment of his debts, but should descend to wealthy adult children, who do not and will not occupy it.

But if the widow and children are tenants in common, as the plaintiff claims, then we insist that as the whole was demised with the assent of all the tenants, the demise was joint, and all should join, as plaintiffs, in the suit for the rent. 1 Chit. Pl. 13. The defendant having taken a lease of the whole of the widow, cannot, in an action brought by her for the rent, dispute her title.

The defendant has paid the whole rent to the widow. If they are tenants in common, and she has received more than her share, they should compel her to account by action. Com. Stat. chap. 39, sec. 1.

The opinion of the court was delivered by

BARRETT, J. This is assumpsit for use and occupation. The alleged right to maintain this suit is grounded upon the right of the children of Dr. Jewett, under sec. 4, ch. 65 of the Comp. Stat.

Dr. Jewett died in 1853, leaving a second wife as widow, and eight children by a former wife. All of said children were of full age at the time of his death, and had resided away from the house and home of their father for some years — some of them in other states of the Union, and one of them in Turkey, in Asia. One of those children is the wife of the plaintiff, whose right he holds by virtue of the coverture. He holds the rights of the other children by conveyances made by them to him.

The plaintiff claims, that under the law before named, the children are entitled, in their several rights, equally with the widow, to the homestead; in other words, that the widow and the eight children are *tenants in common,* in equal individual right, of the premises set out as homestead; and in this suit, that he holds the right in common of eight-ninths, with its incidents of benefit and remedy.

The defendant had been in the occupancy of the premises from the decease of Dr. Jewett to the time when the homestead was set out, and had paid the stipulated rent to the plaintiff, as administrator of Dr. Jewett's estate; at which time the administration was closed, and the plaintiff and the widow then came to stand upon their personal rights in the property of the deceased, as ascertained by the proper settlement of his estate. The plaintiff then notified the defendant that, if he remained in possession of the premises, he must pay rent to the heirs. To this the defendant replied, that the widow claimed the right to control and occupy the homestead, and if he remained he should occupy under her.

The defendant made an arrangement with the widow to occupy the homestead, and occupied the same, paying rent to her from the time the same was set out, until the commencement of this suit, the widow claiming the right to use and occupy the same, as none of the children desired to reside there.

The defendant paid the rent by boarding the widow, who continued to reside in the house with him during a portion of the time, and for the residue the defendant and his family boarded with her.

On this state of facts, the plaintiff claims to recover rent for the occupancy of the premises, proportionate to the interest claimed to be held by him in the right of the said children of Dr. Jewett.

I. In order to maintain this form of action, the plaintiff must

establish the existence of the relation of tenancy between himself and the defendant. 2 Aik. 252.

The mere fact of occupancy might create a presumption of such a relation, that would be *prima facie* sufficient. But such presumption may be encountered by evidence showing the contrary. In this case the fact is found, that the defendant expressly refused to hold the relation of tenant to the plaintiff, or to those in whose right the plaintiff stands, and that his possession was under the widow, to whom he had paid the rent. This would seem to be conclusive against the plaintiff's right to maintain this suit, if he should be treated as standing on the rights of Dr. Jewett's children, as he claims them to be, unaffected by the relation of tenancy, in common with the widow. Chit. on Cont. 374, 377 and notes (Ed. of 1855) ; *Bull* v. *Cook*, 4 Cow. 238.

II. If the defendant sustained, in any sense, the relation of tenant to the plaintiff, it was by reason of the demise of the widow, operating through the relation of tenancy in common, that existed between her and the plaintiff.

By asserting rights created by that demise, the plaintiff must be treated as ratifying it, and thus conceding the authority of the widow to make it upon the terms proved. When, therefore, those terms should have been complied with by the defendant, all right of claim and action against him would be at an end. The fact, then, that the defendant has fully paid the rent to the widow, in fulfilment of the contract under which he occupied, would be conclusive that there was no rent in arrear to be recovered by any body.

III. But the chief burden of the argument has been directed to another ground of defence, which merits the principal consideration in disposing of the case.

The theory of the plaintiff is, that the children become tenants in common with the widow in the homestead, and are entitled to assert, as against her, their respective several rights, and thus, to share with her in the joint use, and in the rents received, or to have partition, or to compel the tenant in possession to hold of them in respect to their several proportionate shares in the estate.

If the language of the statute is such as, upon settled principles and rules of interpretation and construction, to render it necessary

for us to sustain this view, we must do so, whatever inferences may follow as to the wisdom or humanity manifested by such a law.

It will be useful to consider the subject in question, in its several provisions, for the purpose of deducing the true intent of the legislature as to the practical purpose to be accomplished by the pro_ visions of the 4th section.

In the 1st section, it is provided that the *homestead* — defined to be " a dwelling-house, out-buildings and lands appurtenant " — and the yearly products thereof, shall be exempt from attachment on the debts of the owner.

The 2d section provides for setting out the homestead in case the real estate of the debtor, of which the homestead constitutes a part, shall be levied on by execution.

The 3d section provides for determining what personal property is of " the yearly products of the homestead," when the question is raised about it, on the levy of execution on the personal property of the debtor.

It will be noticed that these exceptions of homestead and its yearly products are made in favor of the *housekeeper* or *head of a family*. The purpose is obvious, viz: to secure to each housekeeper or head of a family a house for himself and his family.

This condition of things is to continue up to the time of the husband's death, accompanied by the provision in the 5th section that such homestead shall not be alienated nor encumbered, except by the joint deed of the husband and wife, to be executed and acknowledged by her, with all the formalities that are requisite for a valid conveyance, by her, of real estate, to which she holds the title.

From this provision in the 5th section, the legislature would seem to have regarded the wife as being rather a substantive portion of a family, and having interests as such, both personally, and in her relation to the children, of whom she might be mother, either naturally or legally, which would render a house for shelter, and its appurtenances for convenience and income, somewhat important.

The subject standing thus under the 1st, 2nd, 3d, and 5th sections, while the husband should be living; the 3th section interposes to provide in respect to this subject of a homestead upon his, decease.

It may well be asked whether, in the probable apprehension of the legislature, a home for the widow, if childless, or for the widow, with dependant children, was less worthy to be provided for and secured, than it would be for the same persons, while the husband and father was still living? As indicating the proper answer to this inquiry, and vindicating the humanity of the legislature, it is worth while to notice the language with which that 4th section begins:

"If any such housekeeper or head of a family shall decease, leaving a widow his *homestead*, of the value aforesaid, shall wholly pass to his widow and children, if any there be, in due course of descent."

The *homestead* — the dwelling-house, out-buildings and appurtenances, occupied by such housekeeper or head of a family as a homestead — shall thus pass. For what purpose?

The plaintiff, by his claim in this case, answers: to be cut into nine distinct, equal fragments, eight of which shall be taken by himself in severalty, in the right of eight adult persons, who, for years, have lived in their own right, any where within the four quarters of the globe, and one of which shall be left to the widow, in severalty, though she may have no other place or means of shelter, habitation or support.

We cannot concur in this answer, unless we are compelled to, by the obvious force of the language, countervailing the only sensible or humane intention of the legislature.

It may, perhaps, be admitted, that the language of the 4th section of the statute might be construed to authorize such a result as the plaintiff seeks, if that was manifestly the intention of the legislature.

It may, at the same time, be admitted, that the provisions of that section are quite meagre and crude, both as indicating the precise intention of the legislature, as to the rights and interests of the persons to be benefited, and as furnishing a course of proceedure for ascertaining and administering those rights and interests according to such intention.

Yet, we think that the familiar doctrine, as to the power and duty of the court to modify, control and accommodate the terms of a statute so as to effectuate the obvious purpose to be served by it,

will relieve us from any serious difficulty in holding, as we do hold in this case, that the widow has the right, under the law, to hold control and enjoy the homestead, as a home for herself, without restraint or abatement by any of the children of the deceased husband, who are not members of her family.    We think the clear design of the law is to continue the *homestead entire*, as the home of the widow, or of the widow and children constituting the family at the decease of the husband, housekeeper or head of the family, and that no rights of the children become operative to sever or divert such homestead from full occupancy and enjoyment as the family home, so long as the widow, or widow and children, see fit to continue it as such family home.   In other words, we think that the homestead continues to stand in the same relation to the family of the deceased for the purpose of a home and support, upon and after his decease, as it did before and up to the time of his decease.

When it shall cease to be used or needed as such home, it will be time for the children, and those standing in their rights, to interpose their several claims.   Upon the happening of such event, the courts will render such aid as the cases, when they arise, may require, under the law.

In the present case, the plaintiff is not entitled to recover, and the judgment of the county court is affirmed.