## James H. Hogsett v. Charles Ellis.

*Misjoinder: Judgments.* Under the statute — *Comp. L.* § *4550* — it is not misjoinder to include in a declaration a count upon a judgment with counts for use and occupation, and the common counts.

*Misjoinder: Ruling of court: Waiver.* Where a party to a suit, on his own motion, discontinues as to certain counts in his declaration, by reason of a ruling of the court against him on the ground of misjoinder, he will be held to have waived any objection to such ruling.

*Novation: Statute of Frauds.* Where the tenant of a mortgagor verbally agreed (with his consent) to pay rent to the mortgagee, and that the latter should indorse the same upon the debt, he not having released or agreed to discharge any part thereof, *Held,* That the agreement did not amount to a novation, and that the promise of the defendant (tenant) was to answer for the debt of another, and, therefore, void, not being in writing.

*Landlord and tenant: Attornment: Rent: Mortgagee.* Where the tenant of a mortgagor entered subsequent to the mortgage, the mortgagee can not recover rent of the tenant without an actual attornment to him, even where the mortgage is recognized as the conveyance of a title; but, even if the agreement in this case would constitute an attornment at common law, the legal notion of attornment can have no application as between the mortgagee and the tenant of the mortgagor, under the laws of this state.

*Foreclosure: Title of Mortgagee: Sale.* A mortgage in this state conveys no title to the mortgagee, and gives no right of possession, without foreclosure; until then it constitutes only a lien as security for the debt. As purchaser under the foreclosure sale, he stands in the same position as any other purchaser.

HOGSETT *v.* ELLIS.

*Contract: Forfeiture: Notice: Rent.* Where parties, claiming to hold land by virtue of a contract of purchase, have failed to comply with its conditions, they are, as between themselves and the owner, tenants at will, but not liable for rent while the contract is open and no notice to quit or pay rent, or of any intention to forfeit has been given. A sale of the premises to third parties would not of itself determine the tenancy. Under our statute, notice is required.— *Comp. L.* § *2807.*

*Notice to quit: Tenant: Forfeiture.* Notice to quit was served by the purchaser of premises upon the tenant in possession. It appeared that the tenant's lessor had long been in default in performing the conditions of a contract of purchase with the former owner; and that he had left the country: *Held,* good service.

    *Held further,* that the notice and demand of possession operated as an asser-
tion of the intention to forfeit, as well as a notice to quit.

*Assumpsit: Adverse title: Use and occupation.* Assumpsit for use and occupation can not be maintained when the relation of landlord and tenant did not exist during the occupancy, or when the holding has been adverse to the owner.

    A disputed title can not be tried in an action of assumpsit. But where the relation exists, and the occupancy has been beneficial to the defendant, the law implies a promise to pay a reasonable compensation, unless there be an express contract, or other circumstances inconsistent with such promise or with the duty to pay.

*Tenant at Sufferance.* At common law a tenant at sufferance was not liable for rent as such; but after the rightful estate is terminated, and the landlord gives the tenant notice to quit, and demands possession, he may recover a reasonable compensation for use and occupation·subsequent to the expiration of said notice.

*Notice to quit: Tenancy at will: Use and occupation.* Where a fourteen days notice to quit was given by a purchaser of certain premises to a person claiming to hold them as a tenant of one who claimed them by virtue of a contract of purchase from a prior owner; *held,* that a reasonable compensation might be received for the use of the premises after the expiration of the fourteen days, but that the notice could only operate to determine the tenancy at will at the end of three months, under the statute.

*Tenancy: Adverse title, evidence of.* To disprove the existence of the relation of landlord and tenant, defendant sought to show, by the person who served the notice to quit upon him, that he informed him at the time that he was the owner of the premises; *held,* that as this person had no authority from plaintiff beyond the mere delivery of the notice, evidence of any conversation not relating to the mode of service was incompetent, not being *res gestæ.* A tenant remaining quietly in possession can not render his holding adverse, by a mere silent determination of his own mind, so as to avoid a liability for the use of the premises.

*Adverse title, evidence of.* For the purpose of showing defendant's claim of title, he was asked how he claimed to occupy the premises, to which he replied: "I considered it mine." *Held,* that this was error. It was the mere opinion of the witness, or at most a declaration in his own favor; and not evidence from which the jury could determine the fact.

*Adverse possession: Justice's docket: Proof of loss: Statute of Frauds.* To prove adverse possession, defendant showed that the house upon the premises had been levied upon (as personal property by a verbal agreement with his grantor) under an execution upon a justice's judgment in attachment against his grantor, and that he had bought it in. He thereupon introduced the justice's docket,

which showed a judgment, but no affidavit or bond: also that an execution had been issued, but did not show whether it had been returned: neither the affidavit, the bond, nor any of the files were produced, but parol testimony was introduced as to their contents, without any proof of proper search for them.

*Held*, that without this search the loss of the papers was not sufficiently shown to admit parol evidence of their contents.

*Held further*, that it was error to submit to the jury to find from said evidence any such agreement; that as the house so levied upon had been placed upon the lot, in pursuance of the requirement of a prior contract of purchase, it thereby became a part of the realty, and that a verbal agreement that it might be levied upon by the constable, without any evidence of part performance, would not take it out of the statute.

*Heard July 9th and 10th. Decided October 14th.*

Error to Kalamazoo Circuit.

This was an action of assumpsit, brought to recover the value of the rent of certain property, and also the amount due upon several judgments.

The declaration contained the common counts and several special counts.

The facts are stated in the opinion.

Judgment was rendered for the defendant.

*T. R. Sherwood,* and *Stuart, Edwards and May,* for plaintiff in error.

1. There was no misjoinder of counts in the declaration. The counts were all properly laid in assumpsit.

*a.* This form of action lies for use and occupation at common law.—*3 Mich. 566; 4 Day, 228; 4 Met. 227.*

*b.* It lies upon judgment by our statute.—*2 Comp. L.* § *4552.*

*c.* It was error for the court to compel the plaintiff to elect and abandon his other counts. And the error was not waived by his withdrawing the abandoned counts, after ruling of the court, exception taken and election made.—*6 Ind. 487; 12 Id. 20; 15 Id. 23.*

2. The statements of defendant to Constable Fisher at the time he served the notice to quit, were not proper cross-examination, or relevant; no conversation with defendant having been alluded to in his direct examination. The

constable was only the agent of the plaintiff to hand to defendant the notice.— *6 Bosw. 229, 313; 32 N. H. 358; 4 Ia. 477; 5 Cal. 450; 25 Id. 212; 17 Wis. 477; 16 Ala. 526; 4 Harris, 307; 3 Iredell, 210; 4 Id. 282; 5 Miss. 480; 14 Me. 271; 2 Foster, 450; 8 Allen, 100; 24 Pick. 242.*

3.   The testimony of Ellis, as to how he claimed to occupy the property, was immaterial, and erroneously admitted.    How he did occupy, was one of the questions to be determined by the jury upon the law and facts in the case. This testimony could hardly fail to mislead the jury.— *32 Me. 521.*

4.   The testimony of Bennett and Smith of the loss of files in the Justice Court, in case of *Allen v. Shaw,* was insufficient to admit of parol evidence of their contents, the proper search not having been made.— *1 Mich. 428; 6 Ind. 485; 33 Barb. 323; 16 Johns. 193.*

*a.*   The docket of the justice, and the files in the case, if produced and valid, were irrelevant and inadmissible.— *6 Hill, 292.*

*b.*   The pretended judgment in the case is a nullity.   It does not show the names of the parties in the case; it does not appear that the justice acquired jurisdiction of the person of the defendant, or of the subject matter of the suit. *2 Comp. L. §§ 3679, 3680, 3890, 3711; 32 Conn. 103; 1 Doug. Mich. 502; 8 Mich. 493.*

*Arthur Brown,* for defendant in error.

1.   After defendant has entered under a contract of purchase he can not be liable to an action for use and occupation until evidence is produced of a new agreement between the parties.— *3 Mich. 566; 11 Vt. 190; 30 Id. 759; 32 Id. 551; 6 Johns. 46; 7 Pick. 301; 11 Id. 1; 14 Id. 555.*

Assumpsit for use and occupation can be brought only where the conventional relation of landlord and tenant exists between the parties, and not where it exists by operation of law.— *31 Barb. 286.*

HOGSETT v. ELLIS.

The mortgage given by Shaw to plaintiff gave him no additional rights, as, under the statute in our state, the mortgagee is not entitled to possession, or to rents and profits, until foreclosure.— *Comp. L.* § *4614; 12 Mich. 270; 13 Id. 23.*

The mortgage is a real estate mortgage, although made by one holding a *quasi* chattel interest, and is therefore governed by the principles above laid down applicable to real estate mortgages.— *7 Mich. 9 Id. 246; 8 Met. 19.*

The agreement sworn to by the witness, Myers, whereby Ellis agreed with Shaw to pay plaintiff the rent which should become due to Shaw, was not an agreement upon which Hogsett could sue, as he was a third party to the contract, and could not sue upon it, although for his benefit, unless the consideration moved from him.— *1 Gray, 321; 3 Id. 486; 6 Id. 66; 7 Id. 201; 13 Id. 66; 10 Mich. 426, 431; 14 Id. 496.*

Nor is there any novation in this case; novation exists only where there is an entire change of the original rights and liabilities of the parties to it.

There must be a complete discharge of the principal debtor and an acceptance of defendant as debtor and an agreement on the part of defendant to pay a particular debt.— *1 Pars. on Cont. 189, notes and cases; 7 N. H. 345.*

Therefore, resting the case solely on the evidence on the part of plaintiff, together with some facts introduced on the part of defendant not in dispute, the plaintiff had no right to recover, and can claim nothing from any errors in the introduction of evidence on the part of defendants, if there were any.

2. The plaintiff having withdrawn his counts on the judgments the suit is discontinued as to them, and he can not now ask this court to review the decision of the Circuit Court in ruling on the misjoinder of the counts for use and occupation, with those on the judgments.— *Hilliard on New*

*Trials, 581; 7 Har. & J. 251; 2 Wend. 137; 9 Id. 548; 1 Comst. 125; 1 Cow. 709; 42 N. H. 114.*

Having accepted the benefits of the ruling, by asking and obtaining leave to make the amendment, and by acting under it, he can not now be permitted to question its legality. — *7 Paige Ch. 165.*

There is nothing in the record of the present case to prevent another action being at once brought on the judgments.   This action could not be pleaded in bar to such suit, as the suit on judgment is discontinued.

By striking out the counts on judgment, the declaration stands as if it had never contained those counts. — *4 Mass. 146; 9 Cush. 266.*

An action for use and occupation, is one for unliquidated damages, and can not be joined with an action on judgment, the proper action on judgment being debt.

A statutory can not be joined with a common law action — *1 Doug. 434, (447)* — and such misjoinder may be taken advantage of on trial or writ of error, as well as on demurrer. — *16 Johns. 147; 1 Chitty, 205 – 6; 9 Blackf. 158.*

3.  The court permitted to be given in evidence the declarations of defendant made at the time of service on him, by Fisher, the constable, acting as agent of plaintiff, of an ordinary notice to quit, in which plaintiff assumed to be landlord, and that defendant was his tenant.

Defendant claims that the testimony was admissible on two grounds.

*a.*  The declaration was part of the *res gestæ* of the circumstances of receiving the note from Fisher, disclaiming the implication conveyed by the notice that he was the tenant of plaintiff, otherwise a silent acquiescence in receiving such a notice might raise a presumption that defendant conceded himself to be the tenant of plaintiff. — *3 Lead. Cas. in Eq. 62, (447).*

To make a declaration evidence, it is not necessary that the person making it should himself be doing some positive

act; if he is acted upon, it is a sufficient circumstance — *8 Mich; 1 Greenlf. on Ev.* § *108, a; 11 Pick. 362; 6 Wis. 232.*

*b.* This declaration is also admissible, as explaining the act of possession. — *8 Allen, 24; 1 Greenlf. on Ev.* § *109.*

4. Exception is made to the question propounded to defendant, "How did you claim to occupy the property?" referring to the time at which plaintiff settled all claims with defendant and deeded the property to him. To which the witness replied, "I considered it mine." This was proper evidence.

The question is proper, as it illustrates the position of the parties at the time of settlement. If he barely asserted a claim of ownership, it is sufficient to become the basis of a settlement, and parol testimony, showing such claim, may be introduced for that purpose.

It is also admissible, on grounds above considered, for the purpose of rebutting any implication that the relation of landlord and tenant existed by agreement between the parties, and to show that defendant considered the contract of purchase still in force.

5. Other exceptions of counsel for plaintiff relate to the admission of the judgment and execution on the docket of Bildad Bennett, whereby defendant claims he acquired a title to the house and lot upon this land as chattel property, distinct from the freehold, by virtue of an execution against John H. Shaw.

Could the defendant thus acquire the interest of John H. Shaw in the house?

There is testimony showing that the house was erected on blocks and loosely secured to the ground; that the building was erected by Ellis, and by him sold to Shaw. It was not the building erected on the lot in pursuance of the agreement to purchase. And being the property of Shaw, it was a fixture, and liable to levy and sale as a chattel. — *20 Johns. 29; 20 N. Y. 344; 33 Barb. 410; 13 Mich. 23.*

The intent of the party erecting and owning, in the absence of any agreement will always determine the nature of the building, whether chattel or real.—*18 N. Y. 28.*

The nature of the building was properly left to the jury by the charge of the court.

The tenant may always acquire the title of the landlord subsequent to the demise.—*5 Denio, 430; 6 Wend. 666; 22 Id. 121.*

It is only adverse titles that he is estopped from setting up.—*1 Washb. on Real Property, 358, 360.*

6. There was sufficient evidence of the loss of the files in the case of *Allen v. Shaw.*

The justice who issued, and first had control of them, testifies that he had searched his office for them, and they are not there. His successor is very certain that he never received the files from his predecessor, and is certain there are no such files in his office.

The evidence was a question of fact for the court upon which to determine the loss of the papers, and was amply sufficient.—*1 Greenlf. Ev. § 558; 30 Barb. 72; 33 Id. 323; 16 Johns. 193; 1 Sandf. Ch. 34; Starkie on Ev. (Phil. Ed.) 536; 4 Mich. 496.*

7. The agreement to sell the land by contract or sever the house, could have been made by Dykeman, in behalf of the firm he represented; and it is in testimony, both on his part and on the part of defendant that Dykeman had special authority from his firm to make any contract in regard to the land.

The authority to sell the land need not be in writing *5 Hill, 107*—but may be inferred from the relation of the parties.—*2 Comst. 431.*

It has long been an elementary principle that real estate so held by a partnership may be treated and dealt with as personal property.—*24 N. Y. 442.*

8. The doctrine of attornment has long ceased to have any existence in this state. When the mortgagee ceased to

have any right to the possession under our statute, the last vestiges of any right to deal with the tenant of mortgagor, on more favorable terms than other creditors, were, by virtue of that statute, taken from the mortgagee.— *Taylor on L. and T.* § *629; Mich. cases above cited.*

Notice to defendant of plaintiff's interest could not affect him.

Defendant himself was the equitable owner of the land by virtue of a contract which had never been declared void, and which defendants stood ready at all times to fulfill.

A notice to quit could be of no effect until there had been a prior forfeiture of the contract by some act of the parties.— *7 Mich. 405; 8 Id. 312, 463; 9 Id. 253; 14 Id. 109.*

A notice of forfeiture and demand of payment should have preceded the notice to quit.

CHRISTIANCY J.

The plaintiff in error brought his action of assumpsit against the defendant in a Justice's Court, where the plaintiff obtained a judgment, which was taken by appeal to the Circuit Court, where new or amended pleadings were filed; plaintiff declaring on the common counts; a count for use and occupation of a house and lot; a count upon a special contract to pay rent; another on a special contract for the purchase, by the defendant, of a house and lot upon which a balance was claimed; and two counts upon separate judgments alleged to have been theretofore recovered by the plaintiff against the defendant in a Justice's Court.

The plea was the general issue, with a notice which is not important to be considered here.

On the trial in the Circuit, upon the plaintiff's offering evidence in support of his action, the defendant objected to the introduction of any evidence under the declaration on the ground of misjoinder, claiming that counts upon judgments could not be joined with the other causes of action.

The court sustained this objection, but gave the plaintiff leave to elect upon which he would go to trial.

Plaintiff's counsel excepted to this ruling, but elected to proceed upon the other counts, "*and asked leave to discontinue as to the counts upon judgment,* and to withdraw the same from the consideration of the court and jury." This was granted, and thereupon the trial proceeded for the causes of action in the remaining counts.

This ruling of the court is now assigned for error.

We are inclined to think the court erred in this ruling, and that the objection for misjoinder can not be sustained, since the statute—*Comp. L.* § *4550*—allowing assumpsit to be brought upon judgments and specialties—see *1 Chitty's Pl. pp. 228 to 230, and authorities there cited; People ex rel. Drew v. Circuit Court, 1 Doug. Mich. 434*—is no authority for the general proposition that a statutory, can not be joined with a common law action. The action in that case was a penal action brought upon a statute upon which alone the whole cause of action rested. The question was one of amendment. Though the language used is very broad, it must be confined to the facts of that case, which did not call for decision of so broad a proposition. In the present case, it is not the right, but merely the form of this action which depends upon the statute.

But we are not under the necessity of deciding upon this question of misjoinder, as we are all of opinion that the plaintiff, on his own motion, having discontinued as to the counts upon judgment, waived any objection to the ruling on the ground of the misjoinder. The counts upon the judgment were, in effect, stricken from the declaration, at his own request. A reversal of the judgment here would not replace them.

Had the plaintiff, under the constraint of this adverse ruling, merely elected to proceed with the remaining causes of action, the result might have been different.

HOGSETT v. ELLIS.

The other questions in the case arise under the count on the special contract to pay rent, and that for use and occupation.

The evidence tended to show that Robinson, Duncan and Dykeman, being the owners of the fee, in 1857 or 1858 made a verbal contract with defendant, Ellis, for the sale of the lot in question to him for $125, payable in one year, Ellis agreeing to build a house on the lot within the year; that Ellis went into possession, and, in part performance of the contract, built the house, but paid nothing on the purchase money; that he occupied the premises and lived in the house a year or more, and then made a verbal sale of his interest in the contract to one Shaw, who, with the assent of Robinson, Duncan and Dykeman, took Ellis' place in the contract, the time originally fixed for payment having then expired, but the vendors not having insisted upon payment, and allowed it to run without fixing any particular time; that Shaw went into possession of the house and lot and remained till some time in 1861, when he left, having paid nothing on the purchase money; but while in possession, on the 28th of September, 1860, he borrowed of the plaintiff $120, and gave a note, secured by his mortgage upon the premises, payable in one year, telling the plaintiff he had a paid up contract for the premises; that plaintiff shortly after learned the true state of the title, and that nothing had been paid; that when, or soon after, Shaw left, he rented the premises to Ellis, the defendant, at $1.25 per week, who was to pay the rent to one Myers, the agent of Shaw, to be paid by Myers to plaintiff on Shaw's indebtedness to the latter; that defendant went into possession under this agreement; that afterwards (after some rent had become due) Shaw, Ellis and the plaintiff all met, and it was mutually, though verbally, agreed between them that Ellis (defendant) should pay the rent to the plaintiff, and the latter should indorse it, when paid, upon the indebtedness of Shaw to the plaintiff (there was some evidence

17 MICH.—Y.

tending to show that Ellis knew of the mortgage); that plaintiff did not release, nor agree to discharge any part of Shaw's indebtedness to him, but only to indorse it when it should be paid; that Robinson, Duncan and Dykeman (though nothing had ever been paid them) had taken no steps to forfeit the contract, but that in May, 1862, Robinson and Dykeman, with the heirs of Duncan, sold and conveyed the premises to the plaintiff, the defendant being still in possession, never having paid any rent; that twelve days after this conveyance (May 18, 1862), the plaintiff served upon the defendant a written notice or demand for the defendant to leave and surrender up the premises to him within fourteen days. This notice was served on the defendant by one Fisher, who does not appear to have been employed, or to have had authority for any other purpose than to deliver the paper to defendant. Finally, in April, 1864, the house and lot was sold by the plaintiff to the defendant, who still remained in possession.

Upon this statement of facts, the first question is, whether the action could be maintained by the plaintiff upon the express verbal contract to pay rent?

And we see no ground upon which the action could be maintained upon it, unless, as claimed by the plaintiff, the agreement (being made between Shaw, the lessor and mortgagor, the defendant as lessee, and the plaintiff as mortgagee) operated as an attornment of the defendant to the plaintiff—a question we shall presently consider. This agreement did not amount to a novation, as the plaintiff did not release or give up any part of his claim against Shaw, who still remained liable for the whole. The defendant's promise, therefore (to say nothing of any other objection), was purely collateral, "to answer for the debt" of Shaw, and therefore void under the Statute of Frauds.

The letting, by the mortgagor to the defendant, having been subsequent to the mortgage, the plaintiff could not, as mortgagee, recover rent of the defendant without an actual

attornment to him, even where the mortgage is recognized as the conveyance of a title. — *Evans v. Elliot, 9 Ad. and El. 342; Alchorne v. Gomme, 2 Bing. 54; McKircher v. Hawley, 16 Johns. 288; Jones v. Clark, 20 Id. 50.*

But admitting (which I think there is much reason to doubt) that the verbal arrangement between Shaw and the plaintiff and defendant, in reference to the rent, would have constituted an attornment, where, as under the old common law, a mortgage was recognized as a conveyance of the title, giving a right of possession to the mortgagee; I do not think the legal notion of attornment can have any proper application as between the mortgagee and the tenant of the mortgagor under the laws of this state.

A mortgage here conveys no title to the mortgagee, without foreclosure and sale. Until such foreclosure and sale, it constitutes only a lien as security for the debt. — *Dougherty v. Randall, 3 Mich. 581; Caruthers v. Humphrey, 12 Id. 270; Ladue v. D. and M. R. R. Co. 13 Id. 380; Van Husen v. Kanouse, Id. 303.* And since the statute of 1843 *Comp. L.* § *4614* — the mortgage gives no right of possession until foreclosure and sale. — *Baker v. Pierson, 5 Mich. 456; Crippen v. Morrison, 13 Id. 23.* As a purchaser under the foreclosure sale he stands in the same position as any other purchaser.

Such being the condition of the mortgagee, before he becomes a purchaser at the foreclosure sale, I am at a loss to perceive how his position gives him any more right or capacity for receiving an attornment from the tenant of the mortgagor, than a judgment creditor would have, where a judgment is a lien, to receive an attornment from the tenant of the judgment debtor.

Nor do I perceive how the agreement between Shaw and the plaintiff and defendant stands upon any different principle, or gives any greater rights than it would if the plaintiff had held Shaw's note without the mortgage.

If it be said that, though the mortgage does not give the mortgagee the right to possession against the will of the mortgagor, yet, by the consent of the mortgagor and the tenant, he may be let into possession, and thus acquire the right to rent; so, I reply, may any other person not holding a mortgage acquire, in the same way, the right to possession, and the right to rent, by any valid agreement to that effect. But, in both cases alike, I think it would depend upon the contract *as such*, which might be made between them, and not upon the doctrine of attornment. If the nature of the agreement requires it to be in writing, under the Statute of Frauds in the one case, it must, I think, equally require it in the other.

Where the mortgage is recognized as conveying the fee or reversion (the title of the lessor or some less estate carved out of it) there, especially when it gives the right of possession also, there is something to rest an attornment upon. But, without this, I see no basis upon which an attornment can rest. See *Co. Lit.* (by Thomas) *Vol. 2, pp. 356 to 400; 2 Bl. Com. 288, 290, and note; 2 Greenlf. Cr. 84, and note.*

The charge requested on this point was, therefore, properly refused, and the charge given was, in this respect, sufficiently favorable to the plaintiff.

The remaining questions arise under the count for use and occupation. And it may aid us in the proper understanding of these questions, *first,* to determine what, upon the state of facts already given, were the legal rights and relations of the parties at the time the plaintiff obtained his title, and what rights he thereby acquired.

Up to this time, the defendant first, and then Shaw, who took his place and whose tenant he afterwards became, were in possession under an agreement to purchase, which, though never performed by payment of the purchase money, had never been forfeited and was still open. This agreement, being verbal, was void at law under the Statute of

Frauds, and gave no legal rights in the property; but, being partly performed, might, on the one hand, in a court of equity have been enforced by Shaw, on his making payment, and a legal title have been thereby acquired; while, on the other hand, Robinson, Duncan, and Dykeman, might at law have treated the contract as void, unless restrained by a court of equity, or they might have proceeded to forfeit it for non-payment, so as to cut off any equitable rights of Shaw, growing out of the part performance. But they could not treat it as thus forfeited without giving reasonable notice, or in some way indicating their intention to assert their rights to the property in some manner inconsistent with the further continuance of the contract. And whenever they should give the notice or assert such right, Shaw could only prevent the forfeiture and preserve his equitable rights by offering, within a reasonable time, to pay the purchase money. But if he made no such offer within a reasonable time, and especially if he did not offer to perform at all, then, after a reasonable time for such performance had elapsed, the forfeiture would take effect, and a court of equity would not interfere.

In fact, if this were not an equitable action — one in which the promise to pay can be raised or implied only from such a state of facts and circumstances as render it just and equitable between the parties that such payment should be made — I should have some doubt whether, in this action at law, we could notice the merely equitable rights growing out of this partly performed verbal contract, without the decree of a court of equity establishing the right.

But all parties holding under this contract of purchase were, as between them and the owners, tenants at will of the latter, but not liable for rent while the contract remained open, and no notice to quit or pay rent, or of an intention to forfeit, had been given.—*Dwight v. Cutler, 3 Mich. 566.*

At common law, the sale by the former owners to the plaintiff would, of itself, have determined the tenancy at will. — *Co. Lit. 55 (b.) 57 (a.); 1 Washb. R. Pr. 385.* But under our statute — *Comp. L.* § *2807* — notice would seem to be required.

The plaintiff, as well as all the other parties, being aware of the contract and the state of the title when he purchased, took the property subject to the same equities to which it was subject in the hands of the grantors.

The notice to quit, given by the plaintiff to the defendant, containing a demand of the possession, was, I think, properly served upon the defendant, who was the tenant in possession under Shaw. The latter having been long in default, having left the country, and, so far as appears, his residence being unknown, must be considered as assenting that in all matters growing out of this contract, or connected with the possession of the property, the owners might look to the tenant in possession as standing in his right. And the owner could not reasonably be compelled to let this contract remain open and lay out of the use of the property for an indefinite period of time, until Shaw could be found, and the possession demanded of him personally.

The notice and demand of possession served upon the defendant operated, I think, both as an assertion of the intention to forfeit the contract and as a notice to quit.

Though the notice demanded possession in fourteen days, it could only operate, under the statute above cited to determine the tenancy, at the end of three months after its service. As the plaintiff can not claim under the agreement with Shaw (to pay rent weekly), and must rely upon his claim for a reasonable compensation, independent of any special agreement, he can not have the benefit of the shorter intervals at which the rent was payable to Shaw.

But the notice, though specifying fourteen days, was a good notice to quit at the end of three months, inasmuch

as no proceeding was instituted upon it within that time. *Chamberlin v. Brown, 2 Doug. 120.*

The tenancy at will was therefore terminated at the end of three months from the service of the notice, and the defendant became thereafter a tenant at sufferance. But to render him liable to the plaintiff for use and occupation, it was not necessary to terminate the tenancy at will. It was only necessary for the plaintiff to indicate his intention to forfeit the agreement and call for the possession. This was done by the demand of possession within fourteen days, which was fair notice to defendant that plaintiff wanted the possession at the end of that time, and that if he remained longer, he could not expect to remain rent free.

If the fourteen days was not a reasonable time for Shaw or the defendant in his behalf to pay the purchase money, he could only avail himself of this, even in a court of equity, by showing that he had offered to perform within a time which was reasonable. But here, though the possession was retained for some two years after, and no proceeding was instituted, yet no offer was ever made to perform the contract; nor was any objection ever made that the time fixed by the notice was too short.

It is very clear that assumpsit for use and occupation can not be maintained where the relation of landlord and tenant did not exist during the occupancy, or when the holding has been adverse to the owner, because, among other reasons, a disputed title can not be tried in an action of assumpsit.— *Woodf. L. & T. 356; Evertsen v. Sawyer, 2 Wend. 507; Kittredge v. Peaslee, 3 Allen, 237.* But when the relation exists, and the occupancy has been beneficial to the defendant, we think, upon principle, and the weight of American authority, the law implies a promise to pay a reasonable compensation, unless there be an express contract, or other circumstance, inconsistent with the notion of such promise or with the duty or obligation to pay. This was settled in *Dwight v. Cutler*, already cited, where

the occupancy by the defendant was as tenant at will. And we think the mere fact of the occupancy by A of the land of B, is *prima facie* evidence that A is the tenant of B, which can only be rebutted by showing some fact or circumstance tending to rebut this inference.—*Keyes v. Hill, 30 Vt. 759.* But this inference would not tend to establish one kind of tenancy more than another, but simply the relation of landlord and tenant. This exists in the case of a tenancy at sufferance, though it is not so complete in all respects as in other kinds of tenancy.

But it has been said that, at common law, a tenant at sufferance was not liable for rent; and this must be so beyond question, as to rent, *strictly so called,* which always grows out of express contract, and is fixed and definite in amount. The contract being terminated before the tenancy commences, there is nothing from which rent, *as such,* can arise. But the reason generally given for the rule is broad enough to cover the reasonable compensation for use and occupation, or rather it applies to this as well as to rent. That reason is, the laches of the owner, that it is the landlord's own folly to suffer the tenant to continue in possession after the determination of the rightful estate; on the ground, it would seem, that the owner has the right to re-enter and terminate the tenancy at any time. — See *Chitty's note to 2 Bl. Com. 150; Cruise's Digest* (by Greenleaf), *Title 9 Ch. 2, §5; 4 Kent Com. 117; 1 Washb. on R. Pr. 408.*

Neither *Littleton* nor *Coke* notice any such rule, nor does *Blackstone,* except, perhaps, inferentially, while he apparently admits that the tenant would be liable for the *mesne* profits at common law, which would be quite as inconsistent with the reason given for the rule as compensation for use and occupation. *Cruise* cites no authority for the rule, and *Kent* cites Cruise. But *Chitty,* in his note, cites *Finche's* case, *2 Leon. 143,* and *Washburn* cites this note and the case in *2 Leonard,* and also refers to *Delano v. Montague, 4 Cush. 42* (which refers to the rule without deciding it),

and *Flood v. Flood, 1 Allen, 217,* which adopts the rule upon the authority of *Finche's* case, upon which alone the doctrine seems to rest.  On reference to this case, as reported in *2 Leonard,* it will be found to decide nothing of the kind, and could not, as it is expressly declared that there was not, in that case, any tenancy at sufferance.  But Coke, one of the counsel, asserts *arguendo,* that such was the law, and the court, in giving the opinion, assume the same thing, and say by way of illustration, "Tenant at sufferance, he can not be in this case.  In case of a common person, when the lessee for years holds over his term, he is become tenant at sufferance, and such a tenant shall not pay rent; for it is the folly of his lessor to suffer his tenant at · sufferance to continue in possession of the land after his term, so as any tenancy at sufferance is made by the laches of the lessor, which laches can not be imputed to the Queen." ( The Queen was lessor in that case.)

It may, however, be admitted that this dictum fairly states the general rule of the common law as applicable to ordinary cases of tenancy at sufferance ( no notice to quit being required in such tenancy at common law), but it is by no means clear that it was applicable, or intended to apply, to such tenancy after notice to quit; nothing being said upon that point in the case put.  But, upon principle in the case put, of a tenant for years holding over after the expiration of his term, there may be some reasonable ground for saying that, until such notice or demand of possession, it is the landlord's own folly or negligence to suffer the tenant to remain; since, if he wanted the possession, he ought to demand it, or re-enter; and that, until he shall indicate to the tenant his wish to have the premises, the tenant may infer that he does not wish the possession, or that the tenant shall leave the premises vacant, nor intend to insist upon rent, or he would say so.

But after the rightful estate ( as the tenancy for years) is terminated, and the landlord gives the tenant notice to

quit, and demands the possession, this is as clear an indication of his desire to have the possession as an actual entry would be; and the tenant who has refused to give up the possession when thus demanded, can not justly be heard to complain that the landlord has been guilty of laches for not putting him out by force, or resorting to legal process to that end; nor to claim that for this laches he ought to be allowed the use of the property without compensation. It is little short of absurd to hold that, in such a case, the landlord has been guilty of such laches as should deprive him of all compensation for the use of his property. And such must have been the opinion of Parliament, when by the statute of *4 Geo. 2 Ch. 28, § 1,* the tenant holding over after the termination of his term (tenant at sufferance), after possession demanded, was made liable to double the yearly value.

Such also must have been the opinion of our legislature, when they rendered the tenant in such case liable to treble damages, after notice to quit or demand of possession under *Chap. 150, Comp. L. § 4997.* And though the landlord can only obtain treble damages, by first obtaining restitution under the special proceedings there given; yet whatever may have been the common law, it can no longer be said, in the face of this statute, that the owner, after demanding possession in such a case, has, by omitting to re-enter by force, or to resort to legal process to eject the tenant, been guilty of such laches as should deprive him of all compensation for the use of his property. And the acceptance of, or the bringing suit for such reasonable compensation, must be considered as an election to accept the *actual* damages, and to abandon all claim for *treble damages.* — See *Doe d. Cheny v. Batten, Cowp. 243, and cases there cited; 7 East, 314, n.* And in the present case, especially, there is no ground for holding that the plaintiff must first obtain restitution under the statute, or by ejectment, and then bring his action for *mesne* profits, since the defendant has purchased

the premises from the plaintiff, and since the purchaser, can not be ejected.

We are aware that in England it was held that assumpsit for use and occupation could not be maintained prior to, or independent of, the statute — *11 Geo. 2 Ch. 19* — unless there had been an express undertaking to pay. But since the old notion that such a claim savors of the realty, and could, therefore, be recovered only by an action of a higher nature, has been quite generally exploded, and especially since the true theory of implied promises in assumpsit has come to be better understood and settled, and such promises no longer rest merely upon the inference that a promise *in fact* has been made, but upon the *duty* of the defendant *to pay* — a duty which he will not be heard to deny that he has promised to perform — courts in this country have very properly held that assumpsit for use and occupation may be maintained at common law. And we are certainly unable to see why the implied promise to pay a reasonable compensation for the use of the owners premises, does not, within the limitations above laid down, come as clearly within the principle of an implied promise at common law, as the like promise to pay for the use of a house, or the reasonable value of goods purchased. This we understand to be the principle settled in *Dwight v. Cutler*, and we think it equally applicable to the case of a tenancy at sufferance, at least after notice to quit, or demand of possession, as to any other tenancy.

We think, therefore, that upon the case thus far stated, the plaintiff would have been entitled to recover a reasonable compensation for the use and occupation of the premises, from the expiration of the fourteen days mentioned in the notice up to the time of the sale of the premises to the defendant.

But the defendant undertook to meet the case already stated by an attempt to show that the relation of landlord and tenant did not exist between him and the plaintiff, but

that his holding was adverse, so far as related to the house. And for this purpose he was allowed to show, under objection, that at the time the notice was served upon him by Fisher, he had told Fisher that he claimed to own the property.

It did not appear that Fisher was employed by the plaintiff for any other purpose than merely to hand the notice to the defendant, or that he had any authority beyond this. Had the defendant entered into a conversation at the time with Fisher in relation to the *mode of service*, this would have related to a matter within the agency of Fisher; and what defendant might have said upon that point, might have been a part of the *res gestæ*, and admissible in his own favor. But if defendant had remained silent when the notice was delivered to him by Fisher, could this have been treated as evidence tending to show an admission of the plaintiff's right or of the defendant's tenancy? I do not think it could; and I can therefore see no ground upon which the evidence of his statements to Fisher can be received in his own favor.— See *Emerson v. Harmon, 14 Me. 271; Crosbie v. Leary, 6 Bosw. 312; Morrill v. Foster, 32 N. H. 358; Parker v. Goldsmith, 16 Ala. 526; Plumer v. French, 22 N. H. 450; Osgood v. Coates, 1 Allen, 77; Thompson v. Mawhinney, 17 Ala. 362; Morrill v. Titcomb, 8 Allen, 100; Byden v. Moore, 11 Pick. 362.*

Admitting that defendant's statement, if made to the plaintiff himself, instead of Fisher, would have been admissible in his own favor (upon which I express no opinion), it was in this case merely the statement of the defendant himself to a third person who was under no obligation to inform the plaintiff of it, and it does not appear that he did so. If mere words can constitute an adverse claim, they must at least, in such a case, come to the ears of the owner.

This evidence was therefore erroneously admitted, and the testimony of the defendant himself, as to what he told Fisher, stands upon the same ground.

HOGSETT v. ELLIS.

The defendant, as witness in his own behalf, was, under objection, allowed to be asked the general question, "How did you claim to occupy the property?" To which he answered, "I considered it mine." This, I think, was also erroneous. No attempt was made to bring home to the plaintiff a knowledge of this claim. It was merely testifying to the state of the witness' own mind. — *Law v. Payson, 32 Me. 521.* The question upon this point was whether the defendant did, in fact, hold adversely; and this was to be determined by the jury from facts produced in evidence, such as showing that he went in under some colorable claim of right, at least, hostile to that of the owner, or that the landlord's title had become extinct, or that he had subsequently obtained it, or at least some colorable claim to it, upon which, though unsound, he still might, in good faith, have relied, as against the owner, and that the owner had been informed that he was holding or claiming to hold in hostility to him.

But here the defendant went into possession, admitting the title of the owner (through whom plaintiff derived title) *Remice v. Robinson, 7 Moore, 539; Rennie v. Robinson, 1 Bing. 147; Russell v. Allard, 18 N. H. 225* — and after remaining quietly in possession for a long period, without any overt act or any declaration to the plaintiff or his grantors, indicating a hostile holding, until that possession is demanded of him by the plaintiff (the owner), and he could not then, for the first time, by mere words, without any facts to sustain them, or by a mere silent opinion or determination of his own mind, make his holding adverse to the owner, so as to prevent the latter from treating him, at his option at least, as tenant at sufferance. — *Balls v. Westwood, 2 Camp. 11.* If he could do this, the maxim that a tenant is estopped to deny the title of his landlord, would cease to have any practical value at the very moment when it is most required for the purposes of justice.

He might, it is true, set up any right acquired by him since he went into possession, not inconsistent with the title of the parties under whom he entered at the time he took the lease or went into possession.   He undertook to show this by the attempt to show that he had purchased the house at constable's sale on execution against Shaw, and that there was an agreement between himself and the plaintiff's grantors (then the owners), that the house shall be considered as the personal property of Shaw, for the purpose of sale on the execution.

But this defense rested upon the execution sale; and to establish even a colorable title or claim under this sale, it was necessary to show, by *legal evidence*, the execution, the judgment in the attachment suit, and the proceedings necessary to give the justice jurisdiction.

The docket was introduced, showing what purported to be a judgment, but silent as to any affidavit or bond.   It stated that execution had been issued, but did not show whether it had been returned.   Neither the affidavit nor the bond required to give jurisdiction, nor the execution, nor any of the files, were produced.   But the defendant was allowed to give parol evidence of their contents, after merely showing by the justice who rendered the judgment, that he delivered the docket, and, he believed, the files also, to his successor; that he had looked for the files in his office since and could not find them; and, by his successor, that he was very certain he had not received the files, but that he had not searched for them in his office.

Without this search, we think the loss of the papers was not sufficiently proved to admit parol evidence of their contents.—*Jackson v. Frier, 16 Johns. 193; Woods v. Gassett, 11 N. H. 442; Kimball v. Bellows, 13 N. H. 71; Morrill v. Foster, 32 Id. 359; Depew v. Wheelon, 6 Blackf. 485.*

It can hardly be expected that the second justice, after the lapse of years, could recollect whether the files in a particular case had been delivered to him by his predecessor,

without some special circumstance (which he does not mention) for calling his attention to the fact. They *should* have been delivered to him with the docket, and the former justice thinks they were. In such a case, however confident the second justice might seem that he had not received them, there can be no reasonable certainty without search. The reason for requiring clear and satisfactory proof of loss in such a case is very strong. The very fact that the justice had issued the attachment, and proceeded to judgment and execution, is proof that *he supposed* all the preliminary papers to be in due form; and this must, therefore, be the impression left upon his mind afterwards. If there were any defects — as is quite common where such proceedings have been *ex parte,* and no question raised before the justice — he would of course very honestly testify that all were proper and regular, while an examination of the papers themselves might disclose fatal defects, never brought to his attention.

There was, therefore, no legal evidence that there had ever been any constable's sale on execution, or any adverse holding by the defendant — nothing to rebut the inference of tenancy arising from the occupation by permission of the owner.

It may be proper also to notice here that the house, which the original verbal contract required Ellis to build on the lot (whether constructed on blocks or firmly attached to the soil), must, within the fair meaning of the contract as properly held by the court, be treated as a part of the real estate; if it would not have been so held without such special requirement. — *Eastman v. Foster,* 8 Metc. 26; *Ogden v. Stock,* 34 Ill. 522. Any verbal contract, therefore, between Ellis and the owner, after the house was erected, for its conversion to personal property, or its severance from the realty, would be as clearly within the prohibition of the statute of frauds, as if it had been a contract for the conveyance of a part of the lands. And there is no evidence

tending to show a part performance so as to take the supposed verbal agreement out of the statute, even in a court of equity. The court, therefore, erroneously left it to the jury to find such agreement from the evidence. As real estate, the house could not be sold at constable's sale on execution from a Justice's Court.

Whether the testimony of Bishop, offered by the plaintiff to show an admission by the defendant, on the trial of the case before the justice, that $150 was due for rent of the house, was properly excluded by the court, as not rebutting, because it might have been introduced as a part of the plaintiff's evidence in chief, is a question upon which the authorities are not agreed. See on one side *Shepard v. Potter, 4 Hill, 202; 1 Cow. and Hill's notes to Phil. Ev. note 500.* On the other, *Starkie Ev.* (*Phila. Ed.*) *608, and Jacobs v. Tarleton, 11 Q. B. 419.* And as there is to be a new trial in the case, we do not deem it necessary to decide the point here, as there is little probability that the question will again be presented in the case in the same form.

The judgment must be reversed, with costs, and a new trial awarded.

COOLEY CH. J. and GRAVES J. concurred.

CAMPBELL J.

I do not think that under any system of law which ever prevailed, concerning mortgages, the dealings between Shaw, Ellis and Hogsett would have constituted the latter mortgagee in possession. Had they done so, I am not prepared to say that when a mortgagor voluntarily and intentionally gives up possession to the mortgagee, the latter would not occupy the same position as under the old law in regard to his possessory rights, when lawfully in. I prefer to reserve any opinion on that point. But I agree that in the present case no such change of tenancy exists, and I concur with my brother CHRISTIANCY upon all the other matters which he has discussed.