CITY OF DETROIT *v.* GLEASON.

LANDLORD AND TENANT—HOLDING OVER—RENT.

> A tenant of a city in possession of a stall in a market, who continues in possession after the adoption of an ordinance discontinuing the market, is liable thereafter only for the reasonable worth of the premises, without regard to the rent provided for in the lease.

Error to Wayne; Aldrich, J., presiding. Submitted February 1, 1898. Decided April 5, 1898.

*Assumpsit* by the city of Detroit against Marcellus Gleason for rent. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

*William S. Sheeran* (*F. A. Baker*, of counsel), for appellant.

*C. D. Joslyn*, for appellee.

MOORE, J. Prior to 1892, defendant had been in possession of a stall in the old Central Market in Detroit at a rental of $35 a month. The rents were collected by the market clerk. In April, 1892, the council passed a resolution that the stalls should be rented for a year; the rent to be paid monthly in advance; the leases to be given with the express condition that they could be terminated upon one month's written notice. In May, 1892, the council directed the controller to notify defendant of the termination of the lease, which was done. On the 5th of July, 1892, the council adopted an ordinance discontinuing the market, and providing that the building should be torn down, and the ground should be used as a park; the ordinance to take effect July 1, 1892. The defendant paid

rent up to July 1, 1892, but paid none afterwards. He continued to occupy the building for 19 months after that date. Prior to July, 1892, the city warmed and lighted the building, and hired janitors to take care of it, and to remove the garbage and care for the property. Farmers' and market gardeners' wagons were allowed about the building, and it was a busy, central market, doing the business incident to a large market. After July 1st the city did not care for the building and remove the garbage; it did not light and heat the building; it did not allow farmers and market gardeners to congregate about the building. On the contrary, it caused the heating apparatus to b broken, and the farmers and market gardeners to be kept away from the building, and the occupants of the stalls did but little business. The defendant, with others, attempted to prevent the city from putting them out of the market, and for that purpose commenced a legal proceeding, which finally found its way to this court, in the case of *Petz* v. *City of Detroit*, 95 Mich. 169. After July 1, 1892, the market building was warmed, lighted, and cleaned at the expense of the occupants of the building.

In this case the city sued the defendant to recover rent for the 19 months defendant used the building without paying rent. The court directed the jury to find a verdict for the city at the rate of $35 a month, less 40 per cent. for expenses in heating, lighting, and caring for the building (which per cent. was agreed upon as the reasonable cost of doing so). The defendant claimed that as the city did not recognize him as its tenant after July 1, 1892, it could not treat the lease as in force, and oblige him to pay the rent fixed in the lease, but that he should pay only what the use of the premises was reasonably worth. One cannot read the record without seeing that the city did not consent to the occupancy of the premises by defendant after July, 1892. The court found in the case of *Petz* v. *City of Detroit* that the defendant had no right to continue in possession after July, 1892, and the court

said: "In order to make the holding over of a tenant effective as creating a new tenancy, there must be either the express consent of the lessor, or some act from which his consent may be implied. * * * Complainants' tenancy, whether from year to year or from month to month, was subject to the exercise by the common council of the power of removal vested in that body,"—and decided against the right of the occupants of the stalls to hold them after July 1, 1892.

After the action taken by the city to terminate the tenancy of the defendant, we do not think it can be said the defendant was a tenant at will. Neither the city nor the defendant was bound by the terms fixed in the lease, in deciding what compensation should be paid by the defendant. Suppose the rental value had been many times greater after July 1, 1892, than it had been before; could it be said that the city could not recover what the use of the premises was reasonably worth? Under the opinion of the court in *Hogsett* v. *Ellis*, 17 Mich. 367, we think the jury should have been instructed to return a verdict in favor of the city for what the use of the premises was reasonably worth during the time they were occupied by the defendant.

Judgment is reversed, and new trial ordered.

The other Justices concurred.