PIKE and others vs. MILES and another, impleaded, etc.

HUSBAND AND WIFE: *Conveyance of homestead to wife — Voluntary settlement of other real estate on wife — Question of fraud as to creditors — Rights of married woman over real estate derived from husband. — Pleading — Supplemental complaint.*

1. A conveyance by husband to wife of the homestead, which is exempt from execution, cannot be considered fraudulent as to creditors.

2. Where a voluntary settlement by husband on wife (of land other than that so exempt) was not unreasonable in its character in view of the property

and situation of the husband at the time, and there was no fraudulent intent in fact, it cannot be impeached by subsequent creditors.

3. The whole value of a homestead conveyed by husband to wife was $40,000 ; that part of the land which was *in excess* of the amount exempt by law was worth $5,000; and the husband was worth $75,000 over and above his debts. *Held,* that the conveyance, as to such *excess,* was not fraudulent as against subsequent creditors.

4. The statute defining the rights of married women over their separate estate does not apply to real estate derived from the husband.

5. In an action to set aside as fraudulent a conveyance of land from husband to wife, proof on the part of plaintiffs that since the commencement of the suit a mortgage had been executed by the husband and wife on said land, and the money raised thereby invested in other real estate in the wife's name, was inadmissible without a supplemental complaint, setting up the facts, and asking appropriate relief against such other real estate.

APPEAL from the Circuit Court for *Milwaukee* County.

Action by judgment creditors of *Frederick B. Miles,* against said *Frederick* and *Ella V. Miles,* his wife, and one *Miller,* to have certain conveyances of real property from said *Frederick* to *Miller,* July 10, 1865, and from the latter immediately (and as a part of the same transaction) to said *Ella V. Miles,* set aside as fraudulent, and for the appointment of a receiver, etc. The defendants answered severally. The facts relied upon to show that said conveyances were not fraudulent, will appear from the opinion. The circuit court held the conveyances valid, and dismissed the complaint as to the defendants *Ella V. Miles* and *Miller ;* and the plaintiffs appealed.

It appears from the evidence that *Mr. Miles* was engaged in a " general produce, whisky and commission business," from July, 1865, to January 5, 1866, when he failed; that his business amounted to " from a quarter to a half million of dollars per month ;" that on the 1st of July, 1865, he " was worth $70,000, or $80,000 above all liabilities, after deducting homestead and furniture ;" that on the first of each of the months above named he entered upon his books a statement of his liabilities and assets, and these statements footed up as follows :

|  |  | LIABILITIES. | ASSETS. |
|---|---|---|---|
| July, | 1865 ........ | $82,677 ............... | $213,638 |
| August, | do ........ | 72,207 ............... | 169,292 |
| September, | do ........ | 135,341 ............... | 196,015 |
| October, | do ........ | 182,881 ............... | 240,317 |
| November, | do ........ | 306,042 ............... | 344,730 |
| December, | do ........ | 407,623 ............... | 413,087 |
| Jannary, | 1866 ........ | 274,213 ............... | 268,672 |

The indebtedness for which plaintiffs obtained their judgment was contracted in September or October, 1865, and was for whisky.

*Butler & Winkler*, for the appellants, contended that under section 3, chapter 95, Revised Statutes (applying the maxim *expressio unius exclusio alterius*), a married man cannot, by gift, grant, devise or bequest to his wife, divest himself of property, real or personal, so as to exempt it from liability for his debts. *Stanton v. Kirsch*, 6 Wis. 338; 18 Pa. St. 363; 21 id. 349; 43 id. 363; 37 id. 155; 49 id. 129.

But if the statute is not to be thus construed, and if a married woman has still the right in this state of receiving property by gift from her husband, and holding it independently of his creditors to the same extent to which a court of equity would have protected her at common law, still, counsel contended, the conveyance in this case could not be upheld. A voluntary conveyance of any considerable amount of property by a man owing $80,000, could certainly not be sustained as to then existing creditors. Story's Eq. Jur. § 355 *et seq.* If all his debts then existing have been paid, it has been by incurring new obligations, which grew upon him with such rapidity, that, while he insists that he was worth at least $75,000 over and above his debts and exemptions at the time of this gift, he failed within six months thereafter, with an indebtedness of $274,000, of which it does not appear that any thing has been paid except some few preferred debts, for which his remaining assets were

pledged. Under such circustances, the creditors to whom he incurred these new obligations stand upon the same footing as prior creditors would if their debts had not been paid. Jacobs, 552; Hoff. Ch. 419; 8 Bosw. 75; 1 Bailey, 337; 2 id. 128; 1 Atk. 93; 1 Rob. (Va.) 123. It has been held, that as to existing creditors every voluntary conveyance is void. 3 Johns. Ch. 481, and cases cited. It has been contended, indeed, that this doctrine should be modified to the extent that, where the debtor is of large wealth and the property conveyed small, and his indebtedness small in proportion to his means, the conveyance may be sustained even as to existing creditors (11 Wheat. 199; 1 Conn. 525; Story's Eq. Jur. §§ 355, 362–3); but no rule has ever been advanced from the bench, or contended for by any commentator, by which such a conveyance in the circumstances of this case could receive the slightest support as against any creditor existing at the time. 1 Am. L. C. 49–85. Nor has any such conveyance been supported against a *subsequent* creditor where the debtor was largely indebted at the time, and his subsequent unpaid indebtedness accrued shortly after the conveyance, or was, as in this case, a mere continuance of the former indebtedness. See 8 Wheat. 229; 11 Mass. 421; 8 Conn. 185; 14 Pa. St. 489; 51 id. 452; 7 Bosw. 480; 1 Rob. (Va.) 500, 527; 4 Wash. C. C. 129, 137. A large indebtedness at the time of a voluntary conveyance always raises a presumption of fraud; and a deed fraudulent as to existing creditors is also void as to future creditors. 3 Johns. Ch. 481; 6 Mich. 456; Walk. Ch. 496; 51 Pa. St. 452; 1 Rob. 123; 12 S. & R. 448; 2 Bailey, 128.

Counsel further contended that the defendant, while engaged in a hazardous business, and knowing insolvency would be the inevitable or probable result of want of success in that business, could not thus provide for himself or his family, and cast upon his creditors the hazards of his speculations. *Carpenter v. Roe*, 10 N. Y. 227; 19 Pick. 231; 12 S. & R. 448; 44 Pa. St. 413. As to the property used and exempt, at the time of

the conveyance, as a homestead, counsel argued that such property *may* be diverted from that use and employed for other purposes, which, if it remained in the debtor's hands, would render it liable for his debts; and that, so far as this conveyance hinders the enforcement of that liability, it is as fraudulent as it would be if there were no exemption at all.

*Finches, Lynde & Miller, contra,* as to the homestead, cited *Bond v. Seymour,* 1 Chand. 47; *Dreutzer v. Bell,* 11 Wis. 118; and as to the other property, *Salmon v. Bennett,* 1 Am. L. C. 55; 35 Ill. 559; 4 Minn. 397; 9 Iowa, 480; 1 Metc. (Ky.) 346; 4 Sneed, 121; 1 Head, 323; 9 Ohio, 430; 1 Grant (Pa.) 74; 28 Vt. 799; 39 Barb. 423; 7 Bosw. 480; 24 N. Y. 630–33; 32 id. 423, 629; 27 id. 277; 33 id. 518; 29 Pa. St. 43; 36 Me. 84; 39 id. 119.

PAINE, J. The court below found, and the proof sustains the finding, that at the time *Frederick B. Miles* conveyed his homestead to his wife, he was worth $75,000, over and above his debts, exclusive of the homestead itself. The homestead was worth about $40,000, containing something over the quarter of an acre which by law was exempt from execution, the excess being of the value of from $4,000 to $5,000.

This court has decided, in *Dreutzer v. Bell,* 11 Wis. 118, that a conveyance of the homestead by the husband to the wife cannot be held fraudulent as to creditors, for the reason that, being exempt, it was no more beyond their reach after the conveyance than before. It was not liable for their debts at all. And that decision is applicable here, as to so much of the property conveyed as was exempt from execution. See also *Legro v. Lord,* 10 Maine, 161. It is unnecessary to determine whether the conveyance might have been avoided as to the excess beyond the quarter of an acre, by creditors existing at the time. For the debts of the plaintiffs in this case were contracted subsequent to the conveyance, and the question

is, whether there are any grounds for avoiding the conveyance either in whole or in part as to them.     As to the portion exempt, of course they stand in no better position than existing creditors would have had.     As to the portion not exempt, the conveyance must be regarded as a voluntary settlement upon the wife by the husband.     And in regard to that, if it was not unreasonable in its character in view of the property and situation of the husband, and there was no fraudulent intent in fact, I think the law is that it cannot be impeached by a subsequent creditor.     There are authorities that sustain the same rule as to existing creditors.     But subsequent creditors are in a less favorable position, because their debts, being contracted after the conveyance they seek to impeach, cannot be said to have been incurred on the faith of the property conveyed.     In addition to the authorities cited by the respondents' counsel upon this point, the following may also be referred to : *Benton v. Jones*, 8 Conn. 185 ; *Converse v. Hartley*, 31 id. 372 ; *Pomeroy v. Bailey*, 43 N. H. 118 ; *Sexton v. Wheaton*, 8 Wheat. 242 ; *Hinde's Lessee v. Longworth*, 11 id. 211 ; *Townsend v. Maynard*, 45 Pa. St. 198 ; *Beal v. Warren*, 2 Gray, 447 ; *Moore v. Blondheim*, 19 Md. 172 ; *Thacher v. Phinney*, 7 Allen, 146 ; *Lyman v. Cessford*, 15 Iowa, 229.

The including of the excess over what was exempt, in the conveyance to the wife, cannot be regarded as unreasonable in view of the condition of *Frederick B. Miles* at that time. And it seems very clear, as the court below found, that there could have been no actual fraudulent intent, either as to existing or subsequent creditors.     This being so, applying the rule of law established by the authorities above cited, it follows that the conveyance cannot be impeached by these plaintiffs.

The case of *Mullen and Wife v. Wilson*, 44 Pa. St. 413, relied on by the appellants' counsel, is not inconsistent with the doctrine of the cases above cited, for it was based upon the idea of an actual fraudulent intent as against the subsequent creditors.

I do not think the language of some of the cases relied on by the appellants, to the effect that a voluntary conveyance by one largely indebted at the time is void as to creditors, should be taken in an absolute sense. In order to give it that effect, they mean that he must be largely indebted in comparison to the amount of his assets. A man with property worth only $1,000 and owing $900, might be said to be largely indebted within the meaning of those cases. But if he had $100,000 of property, and owed $25,000, I think he would not. The true question is better stated in the other cases, found among those above cited, which hold that the inquiry is not whether the grantor was indebted, but whether he had ample and abundant means to satisfy all his debts after the conveyance. That he had in this case abundantly appears, taking his statements as true, and there was no evidence to contradict them. Nor is there any thing to show that this estimate of his assets depended on the success of adventures which he then had at risk; as was the case in *Carpenter v. Roe*, 10 N. Y. 227. On the contrary, he swears that he then owned, in property exclusive of his homestead, $75,000 more than enough to pay his debts. The exhibit showing the amount of his debts and assets in July, 1865, the month in which this conveyance was made, shows debts something over $82,000, and assets something over $213,000. This, taken in connection with the fact that the great bulk of the property conveyed to his wife was a homestead, absolutely exempt from execution, seems wholly to exclude all idea of any fraudulent intent as to creditors, with respect to the comparatively small amount of the excess over the exemption, and all idea of placing that amount beyond the contingencies of his business. I can see, therefore, no ground for disturbing the conveyance in favor of these plaintiffs.

It appeared by a stipulation in the case, subject to objection for irrelevancy and incompetency, that since the commencement

of this suit the wife and husband have mortgaged the property for $12,000 lent to the wife, and which she has invested in a milling business, in which she employs her husband at a' salary; and also that they had mortgaged it to secure some debts of the husband. The appellants' counsel then contends that even though this property is to be regarded as the wife's, yet it is not to be regarded as her separate estate, as to which she has the powers and rights given by our statute in regard to the separate estate of maried women, because she derived this from her husband, while the statute applies only to real estate derived by married women from other sources. In this I think he is correct. But he then contends that it follows that this money raised by the mortgage was the husband's money, and that his creditors are entitled to it. This question we shall not determine, for the reason that this mortgage was made after this suit was begun, and the money raised by it has been invested in the wife's name in other real estate. If the plaintiffs have any remedy in respect to that, they should have averred the facts by a supplemental complaint, and asked the appropriate relief. The evidence, being objected to as incompetent under the pleadings, should have been excluded.

I think the judgment should be affirmed.

*By the Court.*— Judgment affirmed.