HENRY J. CIPPERLY *et al.*

*v.*

CHARLES H. RHODES *et ux.*

1. HOMESTEAD—*whether in fraud of creditors.* It is not a fraud upon creditors, for a debtor, even if in insolvent circumstances, to buy a homestead which would be beyond their reach.

2. SAME—*vesting title in the wife.* Nor will an insolvent debtor be deprived of the benefit of the homestead exemption, where he purchases property with his own money, merely because he procures the legal title to be vested in his wife, it being his intention, when he purchased, to hold the property as and for a homestead.

3. SAME—*abandonment thereof.* Where a party left this State to better his condition, and being taken sick rented rooms in an adjoining State and kept house there with his wife, and so remained about nine months, but always with the intention of returning to his home in this State: *Held*, not to amount to an abandonment of his homestead here.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. A. J. GALLAGHER, Judge, presiding.

This was a suit in chancery, instituted in the court below by Henry J. Cipperly and others, against Charles H. Rhodes and Jennie Rhodes, his wife, to subject a certain house and lot in the city of Decatur, to the payment of a debt owing from Charles H. Rhodes to the complainants, the latter alleging the property was purchased by said Charles H. with his own money, at a time when he was in insolvent circumstances, and procured it to be conveyed to his wife, in fraud of the rights of his creditors. The defendants claimed the benefit of the homestead act of 1851.

The facts connected with the transaction will appear from the finding of the court in its decree, which was as follows:

The court found that Charles H. Rhodes was indebted to complainants, on the sixteenth day of August, 1866, in the sum of two thousand one hundred fifty-four dollars and eighty cents; that on the thirteenth day of February, 1867, complainants obtained judgment in the U. S. Court for Southern District of Illinois, against C. H. Rhodes, for the sum of two thousand and ninety dollars and ninety-two cents. *Fi. fa.* issued on the judgment twenty-sixth day of same month, directed to the marshal of said district to make amount of said judgment; that John W. Bear, a deputy marshal of said district, about the first day of April, 1867, called on said Rhodes and demanded payment of said execution; that said Rhodes

refused payment, or turn out property in satisfaction of the same; that the same was returned into said court *nulla bona,* and that the judgment remains unsatisfied. The decree shows that the court found further, that on the first day of December, 1866, Charles H. Rhodes purchased of Jane and Thomas Hathaway, the property described in the bill, for one thousand four hundred and fifty dollars, and paid said amount of purchase money at the time of making said contract, with his own funds.

That said Charles H. Rhodes caused and procured said Hathaways to make the deed to said property to Jennie Rhodes, his wife; that the same was done on the first day of December, 1866; that on said real estate there is a dwelling house and other improvements, and was worth at the time of said conveyance one thousand eight hundred dollars; that at the time of procuring said conveyance, the said Charles H. Rhodes was and since then is insolvent, and that complainants had no other means of making their debt than out of the property herein described.

The court finds the allegations in amended bill are true; that the equity of the cause is with the complainants, and that there is justly due complainants, at time of entering decree, two thousand and ninety dollars and ninety-two cents, with interest from date of judgment. Ordered, that Charles H. Rhodes pay, within thirty days from date of decree, two thousand and ninety dollars and ninety-two cents, with interest from thirteenth day of February, 1867, and the cost of the suit by said decree. It is further ordered by the court, that in default of such payment, the master in chancery of said court proceed and appraise and set off to defendant, Charles H. Rhodes, a homestead of one thousand dollars out of the real estate described in the bill; the appraisement to be made and homestead set off in the manner provided in the statute by sheriffs upon execution.

The decree then provides that the master, having set off to the defendant, Charles H. Rhodes, a homestead out of the

premises, to sell the remainder, not set off, at public sale to the highest bidder, for cash, at door of court house in Decatur, in said county, after publishing due notice; that he issue to the purchaser a certificate of sale, and apply proceeds of sale to discharging costs and meet payment of debt of complainants; if not redeemed from in fifteen months, to make sufficient deed of conveyance.

A question is made in regard to the abandonment of the premises as a homestead, after the purchase. It being shown that the defendants were absent in the State of Indiana, for some time, they explained their absence, through the testimony of Charles H. Rhodes, as follows: he testified that he was a married man, had a wife and family, and lived with his family on the premises in the bill described, occupying the house with his family, and had occupied it as a homestead since the purchase, except when absent in Indiana. Was in the employment of the Terre Haute & St. Louis Railway part of the year 1867–68; that his wife lived in Terre Haute, Indiana, with him, came over and was taken sick, hired a couple of rooms, and she kept house while there. His wife has occupied the premises fifteen months out of the last twenty-four. He left Decatur in the spring of 1867, to better his condition, without intention of remaining permanently away. He did not intend to abandon his homestead when he left; was not then in the employment of said railway company; Jennie Rhodes, to his knowledge, never owned any other real estate in Decatur, other than that described in the bill.

The complainants bring the case to this court by writ of error, and insist that the purchase of the property by the debtor, under the circumstances, and the conveyance thereof to his wife, was in fraud of creditors; further, that the premises had been abandoned as a homestead.

Mr. J. C. LAKE and Mr. F. S. MURPHY, for the plaintiffs in error, contended the conveyance to the wife of the debtor, he being insolvent, was fraudulent as to creditors, citing 1 Story's

Eq. Juris. sec. 371; *Curtis* v. *Price,* 12 Ves. 103; *Worsley* v. *Mattis,* 1 Burr. 474; *Malin* v. *Garnsey,* 16 Johns. 189; Jeremy on Eq. Juris. B. 3, Pt. 2, Ch. 3, sec. 4.

This court has held in similar cases to the one above at bar, the doctrine that where property has been conveyed to hinder and defraud creditors, by a debtor, the conveyance will be held good as against the grantor, and he will not be permitted to come in after the creditors have discovered the fraud and recovered the property, and set up the claim of exemption of the statute in regard to that property. *Getzler* v. *Saroni,* 18 Ill. 518; *Cassell* v. *Williams,* 12 Ill. 387.

Messrs. CREA & EWING, for the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

We are satisfied, on mature consideration, that this decree should be affirmed. No question is made that the homestead right would have existed in Rhodes, had he taken the deed to the lot in his own name, instead of taking it in the name of his wife. He paid the purchase money wholly out of his own funds, and at a time when he had a right to obtain a homestead which would not be liable for his debts then existing, or to be subsequently contracted; and the sole question is, whether taking the deed to his wife placed the property beyond the protection of the homestead law.

This is an inquiry, into which the *animus* enters largely.

Did he purchase it as and for a homestead, and has it been so used and held? If such was his intention, then, taking the deed to his wife should not, we think, cut off that right. If the design was simply to acquire property which he could hold in fraud of his creditors, then the law would strip it of its covering, and subject it to the payment of his debts; but it must be remembered that it was not a fraud on creditors to buy a homestead which would be beyond their reach. Such was the manifest purpose of the act.

There is a plain distinction between this case and that of *Cassell* v. *Williams*, 12 Ill. 387, cited by plaintiffs in error. There the debtor had fraudulently sold a horse to keep it from the reach of his creditors, which, if he had not sold, would have been exempt from execution, and this court held, that as the sale was valid as between the vendor and vendee, and only void as to creditors, the vendor could not subsequently claim it as exempt from execution, and recover three times its value against the officer, as for selling property exempt by law.

In *Getzler* v. *Saroni*, 18 ib. 518, the debtor fraudulently conveyed the property to a third person, in order to place it beyond the reach of his creditors, and then absconded, when the wife interposed a claim to the property as a homestead. Without deciding whether the husband could have successfully interposed such a claim, this court held that the wife could not while the husband was living. While he is living, and the head of the family, in contemplation of law, the right of exemption, conferred by the statute, vests in him alone, and in his name alone can it be set up. To the same effect is the case of *Redfern* v. *Redfern*, 38 ib. 509.

We can not see the applicability of either of these cases to the one now before us. Here the claim is interposed by the husband, in whom the statute vests it.

We do not perceive any ground for contending that Rhodes had abandoned the place as a homestead. He had been absent a few months in an adjoining State, with his family, and soon returned. This, clearly, was but a temporary absence, for a temporary purpose, the *animus revertendi* always remaining. He did not, thereby, lose his citizenship or right to vote. His domicil all the time was Decatur. The decree must be affirmed.

*Decree affirmed.*