## J. L. CAMPBELL *v.* THOMAS N. ADAIR, *Admr.*

1. HOMESTEAD EXEMPTION — HOW IMPRESSED WITH THAT CHARACTER. — The premises do not become impressed with the legal character of a homestead until actual residence and occupation by the family as a home; but, after that character has been impressed, temporary absence *animo revertendi* will not constitute an abandonment, so as to forfeit the protection of the exemption law of 1857. Rev. Code, p. 529, art. 281.

2. SAME — OCCUPANCY WHICH IS REQUIRED TO PRESERVE THE EXEMPTION RIGHT. — Actual, literal, physical, continuous occupation of the homestead by some of the family is not required. Under some circumstances occupancy by a tenant for the benefit of the family is sufficient.

3. SAME — CLEAR PROOF OF ABANDONMENT REQUISITE TO FORFEIT HOMESTEAD. — The waiver or forfeiture of the homestead right should be declared only upon clear and decisive proof of an intention totally to relinquish and abandon such premises *animo non revertendi.*

4. SAME — LOCUS PŒNITENTIÆ — RESUMPTION OF POSSESSION. — If the intention to abandon the homestead exists, the *locus pœnitentiæ* may be availed of, and such intention be changed, and possession be resumed, before intervening rights have attached, and the homestead will be protected.

5. SAME — CASE IN JUDGMENT. — The widow and child continued after the death of the husband and father, in 1865, to reside on the homestead of one hundred and sixty acres, owned and occupied by him, as a residence, at the time of his death, until 1867, when she removed to her father's, some distance away, renting the premises to a tenant for 1867 and 1868, during which time she remained at her father's, but returned in 1868, and occupied the premises as a home: Held, that this did not constitute an abandonment of the homestead, so as to make it liable to the husband's debts.

APPEAL from the probate court of Choctaw county.

The opinion of the court fully states the facts of this case.

*Harris & Withers,* for appellant.

The point in this case, which will dispose not only of the appeal, but of the controversy, is this: whether or not there was an abandonment of the homestead by the widow; and this point involves a construction of the Code, art. 281, p. 529.

The homestead and other exemption laws are founded in benevolence, and in a public policy averse to the exaction of all a man possesses. That policy looks to the consequences which generally result from dispossessing a family

of their home, vagabondism and immigration. Home is a strong tie, by which a man is bound to his country. The laws, therefore, should be liberally construed to advance this policy; but, at the same time, they should be interpreted as all laws which affect the rights of *bona fide* creditors. No abandonment founded on the necessities of the family, their comfort, convenience or welfare, is justified. Whitworth v. Lyon, 39 Miss. 469. The occupancy by a tenant does not invest the place with the character of a homestead. The word "occupy" in the statute means "residence." True, the family may leave on trips for pleasure or health, having an intention to return. Families are not compelled to remain continually at home, but the place must continue to be the home. The continuance of occupation as a residence is what is meant, and the abandonment of the place as a residence is ceasing to occupy it in the sense of the statute.

We are to consider whether the widow, in this case, intended to "occupy" the place as a "residence." We cannot be held to prove what was in the mind of the widow, except by what she did, and if her acts prove a *prima facie* case, then it devolves on the opposing party to prove the actual intent.

The petition was rightly filed against the administrator; to dismiss it was error. Carpenter & Co. v. Brownlee, 38 Miss. 200.

*W. F. Brantley,* on same side,

Cited Rev. Code, 1857, p. 529, art. 281; Davenport v. Alston, 14 Ga. 274; Carpenter & Co. v. Brawnle et al., 38 Miss. 200; Acts 1865, p. 137; Acts 1866, 1867, pp. 221, 222; Smith's Com. 879, § 757; Conal & Co. v. Railroad Co., 4 Ell. & Johns. 6; Smith's Commentary on Construction of Statutes, 619, § 465; 1 Kent's Com. 462; 36 N. H. 158; 34 ib. 392; True v. Morris, 2 Wisc.; 28 Vt.; 4 Cal. 23; ib. 268; 4 Iowa, 368; 39 Miss. 469.

*Walthall & Golladay,* for appellee.

I. The following are some of the objections to the decree :

1. The petition does not pray for an order to sell land, but simply that the administrator be required to show cause why the land should not be sold. The most the court could do on this petition was, if it appeared the administrator was derelict in his duty, in failing to take steps for the sale of the land, to revoke his letters.

2. Under our probate system, an order of sale of lands to pay debts of a decedent is not authorized to be made, except on the petition of the administrator (Rev. Code, p. 445, art. 887), or on an exhibit made by him, under oath, of the condition of the estate, etc. Code, p. 448, b. 98. It is not deemed necessary to cite authority at this day to show that any order for the sale of a decedent's lands to pay debts is void, not made in strict compliance with the statute authorizing such sales.

3. The decree, so far as it orders land to be sold, when the widow and child were no longer parties, is absolutely void. Root v. McFerrin, 37 Miss. 46.

4. The decree does not specify what particular land shall be sold. "When a part only is decreed to be sold, the decree shall specify what part." Rev. Code, p. 446, art. 89.

5. No bond is required of the administrator. This is fatal to the decree. Acts of 1858, p. 187 ; 28 Miss. 52 ; 34 ib. 304.

6. Taxing the administrator personally with the costs was unauthorized. If the court had the power to decree the sale, without any application from the administrator, certainly the decree should have been made on the same terms as to costs, as if there had been an application. But we insist that the decree of sale was void ; and if this be so, the order for costs, which is but incidental, is void also.

II. The decree was correct in so far as it refused the application to sell the one hundred and sixty acres claimed as a homestead.

1. The exemption law of 1865 does not require, in terms,

that there shall be actual occupation of the homestead; and so obscure is the meaning of the seventh section of the act, that we are left in doubt whether or not it operates to repeal that part of the act of 1857 which required some one or more of the family to occupy the homestead in order to save it from sale for debts. We will not contend that it clearly does so operate ; but we submit, that the homestead provision, being one of the "amendments in this act embraced," may be fairly construed, in view of the terms employed in section 7, to "supersede the former act" of 1857, which was "revised and amended" in this last act of 1865. See Acts 1865, p. 139.

2. If occupation be necessary, occupation by a tenant is sufficient in a case like this. Citing 1 Am. Law Reg. vol. I, N. S. p. 641–705 ; 20 Texas, 24; ib. 96 ; 30 Vt. 678 ; Davenport v. Alston, 14 Iowa; 36 N. H. 166; 39 ib. 484; 34 ib. ; 21 ib. 178 ; 23 ib. 536 ; Am. Law Reg. 712, and cases cited ; Rheno, admr., v. Davidson, Opinion Book K, p. 88.

3. Even if there was an abandonment by the widow, there was none, and could be none, by the minor child. The child was incapable of waiving or relinquishing her rights. An infant loses nothing by non-claim.

TARBELL, J. :

This case comes to us from a decree of the probate court of Choctaw county. The controlling question arises under the homestead law, and is one of practical importance. We have more particularly to consider and determine what constitutes an "abandonment" of the homestead right, after its acquirement and actual occupation by those entitled thereto. The facts are these : On the 10th day of August, 1868, J. L. Campbell filed a petition in the probate court of Choctaw county against Thos. N. Adair, administrator of the estate of F. M. Adair, deceased, A. F. Adair and Mary Adair, setting forth that F. M. Adair, a citizen of Choctaw county, died in 1865, leaving real estate in said county ; that in June, 1866, Thos. N. Adair was appointed adminis-

trator of said estate, and conducted the administration
until May, 1867, when he declared it insolvent, and a decree
was made accordingly ; that the administrator was about to
make his final settlement and distribution ; that the peti-
tioner was a judgment creditor of said estate, having a
judgment for $1,115 40 against the same ; that the estate, as
it had been conducted and managed, would not pay more
than ten or fifteen cents on the dollar of its indebtedness ;
that certain lands described belonged to deceased in his life-
time, and at his death were set apart to his widow and child
as exempt property under art. 281, p. 529, of Rev. Code,
but that both the widow and child at the date of the decree
of insolvency had abandoned said lands, and were living at
Andrew Scott's ; that said lands are therefore a part of the
estate of F. M. Adair, deceased, subject to be sold, admin-
istered, and distributed, but that the administrator has
failed to distribute it, etc.    Citations to creditors, administra-
tor, widow and child, to show cause, etc., why said lands
should not be sold for the benefit of creditors, etc., were
prayed for.

Citations having been issued and served, the petition came
on to be heard at the January term of said court, 1869, at
which term the record recites, that the defendant, T. N.
Adair, having been duly summoned, and failing to appear
and plead, answer or demur, it was by the court ordered that
the allegations of the bill be taken as confessed by him.   At
the same term complainant dismissed his suit as to A. F.
Adair and Mary W. Adair, and a final decree was made
directing the said administrator to sell forty acres, part of
said lands of deceased, and apply the proceeds to the
payment of the debts of the estate, etc.   The petitioner
excepted to the decree and filed his bill of exceptions, upon
which the case is presented to this court.   It appears, that
upon the hearing the petition, witnesses were sworn and
examined, who testified, in substance, that in 1867 the lands
were rented by the widow to parties who moved upon and
occupied the same as her tenants ; that the widow made a

partial sale of household furniture, cooking utensils, bedding, one horse, etc., when she moved to her father's; that she was advised by her friends to this course because of her ill health, loneliness, and the bad repair of her place; that she also rented her lands in 1868; that she subsequently returned to her plantation, which she now calls "home;" that the widow's health was poor in 1867; that the place was out of repair; that the rent was more than she could have made off it in any other way; and that for these reasons she was advised and induced to rent her farm and live for a time at her father's; that like other places her plantation was in good order at the breaking out of the war, but at its close was in bad repair; that her place was once the subject of a raid by the federal troops. Upon these facts the probate court made the decree referred to for the sale of a portion of the land set apart as a homestead, the proceeds to be applied to the payment of the debts of the estate. The widow was occupying the lands in controversy at the time of the death of her husband, and continued to occupy them up to 1867, when she rented them for that year and again for the year 1868, by written leases, the lessees holding and occupying as her tenants; she living at her father's, as already stated and for the reasons given, until the latter part of 1868, when she returned to the homestead, calling it home.

Upon filing the petition, process to bring in the administrator, widow and infant was served on all these parties. The administrator did not appear, and judgment *pro confesso* was taken against him, when the petition was amended by striking out the widow and infant, and the cause proceeded against the administrator to final decree. The case is brought to this court by the petitioning creditor, who makes the following assignment of errors: 1. The court erred in not decreeing the whole of the land to be sold for the payment of debts, when the proof showed that no one of the family continued to reside on it after the death of F. N. Adair. 2. The administration did not not answer the petition, and the same was taken as confessed as to him, and the court erred in hearing

any proof, but should have made the decree for the sale of the land upon the petition and *pro confesso.* 3. The court erred in hearing any proof after the petition was confessed.

The decree in this case is erroneous for several reasons ; but it is unnecessary to discuss more than a single question, viz.: do the facts warrant the conclusion, that the widow had "abandoned" the homestead, and the purpose of re-occupying it as such? So far from showing such an intention, the facts establish the reverse of such an abandonment. The land had been set apart to the widow and child as a homestead ; they were then in the possession and actual occupancy of the premises, and continued to reside thereon from the death of the husband and father in 1865 to 1866, 1867, when the widow, being in poor health, the place out of repair, partly from the casualties of the war, and the rent being more than she could realize by its cultivation, she was advised by her friends to rent, and reside for a time at her father's. Acting upon this advice and upon the facts stated, she rented the plantation in 1867, 1868 to tenants, they paying her rent, and she exercising acts of ownership over it. In the course of the year 1868, she returned to her own place, calling it home. This case is almost literally within the provision of section 3 of the act of February 16, 1867. If not the precise case provided for therein, it is within its spirit, certainly by a liberal construction of that statute.

Section 3 of the act approved February 16, 1867, Laws of Mississippi, p. 222, is as follows :

" Sec. 3. *Be it further enacted :* That the exemption laws of this state shall be so construed that when the houses have been destroyed or plantations laid waste during the war, and families have been forced to abandon their homesteads by reason thereof, or such abandonment has been or may hereafter be occasioned by fire or other casualty, that the heads of families shall be esteemed to be in possession of the same until they have abandoned the purpose of re-occupying it as a homestead, and that the homestead

shall be exempt from execution or attachment or garnishment the same as if the parties were in the actual occupancy thereof."

But we should not meet this case fully if we failed to express our view upon that portion of the law of 1857, which, after declaring the exemption therein declared to be "for the benefit of the widow and family of the deceased," adds, "some or one of them continuing to occupy such homestead," etc. Waiving the question of the repeal of this provision by the law of 1865, we are of the opinion that it would be a harsh rule to enforce the qualifying words of the law of 1857 according to their literal import. There must be exceptional cases. Section 3 of the act of February 16, 1867, provides for some of these. Temporary absence, while traveling or visiting, would most certainly not be held a forfeiture of the benefits of the exemption. The case before us is little else. So, temporary residence in town for church and school purposes, leaving the homestead in charge of a tenant, or overseer, still retaining the home, with an intention to return thereto, ought not to be held an abandonment of the homestead right. The courts of Illinois, whose statute of exemption is in precisely the language of our law of 1857, have held that the occupancy required by the statute may be by tenants. 21 Ill. 178 ; 23 ib. 536. The policy of homestead exemption, though of comparatively recent origin, now prevails, however, in nearly, if not quite all the states, but the statutes on the subject are dissimilar, and often crude. Necessarily, the decisions of the courts of the various states on questions arising under these laws, have been equally wanting in harmony and uniformity.

One of the leading objects of these statutes is to create, preserve and protect a home for the family, for the wife, mother and children, as well as for the husband and father. A characteristic feature of home is a place of residence, of which occupancy is an essential element. As a general rule, to constitute a homestead there must be actual occu-

pation, and use of the premises as a home for the family. The premises must be appropriated, dedicated or used for the purpose designated by the law, to wit: as a home, a place to abide and reside on, "a home for the family."

Another general rule is, that this use must be active and not constructive. And another, that the premises do not become impressed with the legal character of a homestead until actual residence and occupation by the family as a home. Holden v. Pinney, 6 Cal. 235–625 ; Norris v. Moulton, 34 N. H. 392 ; Benedict v. Runnell, 7 Cal. 245 ; Myer v. Claus, 15 Texas, 516 ; Wisner v. Farnham, 2 Mich. 472 ; Rix v. McHenry, 7 Cal. 89 ; Charles v. Lamberson, 1 Iowa, 435 ; Rhodes v. McCormick, 4 ib. 373 ; Williams v. Swetland, 10 ib. 51 ; Philles v. Smalley, 23 Texas, 498 ; Horn v. Tufts, 39 N. H. 478, 483 ; True v. Morrill, 28 Vt. 672 ; Mithery v. Walker, 17 Texas, 582, 593 ; Prior v. Stone, 19 ib. 371 ; Davis v. Andnes, 30 Vt. 678 ; Earle v. Earle, 9 Texas, 630 ; Kitchell v. Burgwin, 21 Ill. 45 ; Walters v. The People, 21 ib. 178.

In the case at bar, the homestead had been dedicated as such, and it had been impressed with this legal character before the creditor interposed. The cases involving the homestead in various ways in the different states are numerous, in very many of them the claim to the exemption being attempted to be maintained through permanent, constructive occupation, or permanent occupation by tenants, without the prior dedication referred to, and hence not strictly parallel with the case at bar. In the construction of these statutes, whether they shall be liberally or rigidly interpreted, is not precisely the distinction demanded. They should be sensibly construed, say the court in Gibson v. Jenning, 15 Mass. 205, with a view to secure the object arrived at in their enactment.

To require the actual, literal, continuous, physical occupation of the homestead by some one or more of the family would turn a humane and beneficient law into one of imprisonment and punishment. It would subject the homestead,

provided by a wise and liberal policy, to the casualties of life and the chances of unforeseen accident ; it would require of the family the precision of military regulations, and would demand that endless "watch and ward" which the law could never have contemplated.

It is not necessary, and indeed it would be difficult to fix a limit beyond which the courts ought not to afford protection in cases of this kind. We apprehend, say the authorities, that each case must depend upon its own merits, according to the facts developed, rather than upon stated rules, for the present, at least.

In Vermont, a lease of the home farm for five years, accompanied with removal, there being no evidence of an intention to return to the premises to live, upon the expiration of the term, if ever, were held to forfeit the homestead right in favor of the grantee of the husband alone. Davis v. Andrews, 30 Vt. 678 ; *vide*, also, Hoith v. Webb, 39 N. H. 158, 483. But it was held otherwise in Texas, where the lease was short and there was an intention to resume possession. Hancock v. Morgan, 17 Texas, 582. Such is the case before us, that intention having been carried into effect by an actual return to the homestead and calling it home.

When the homestead right has once attached, continuous, actual occupation is not indispensable to preserve it. 18 Texas, 417 ; 17 ib. 74 ; 21 Ill. 178 ; 23 ib.

In the class of cases arising under the exemption laws of the character of the one at bar, we are of the opinion that the waiver or forfeiture of the homestead right should be declared only upon "clear and decisive proof of an intention totally to relinquish and abandon such right," accompanied by removal from the premises, and that it ought "clearly, and beyond all reasonable ground of dispute, to appear, that the abandonment was with an intention not to return and claim the exemption." "A doubtful or mixed case," say the authorities, "will not avail to cut off the right." And, "if there being an intention to abandon,

such intention may be changed and possession resumed before intervening rights have attached." 20 Texas ; 24 ib. 96 ; 30 Vt. 678 ; 21 Ill. 178 ; Rhea v. Davidson, Opinion Book K, p. 88.

The following quotation is common to the exemption laws both of Mississippi and Illinois, to wit: "and such exemption shall continue after the death of such householder for the benefit of the widow and family of the deceased, some or one of them continuing to occupy such homestead until the youngest child shall become twenty-one years of age and until the death of the widow," etc.

This statute has received the construction of the courts of both these states in cases similar to the one under consideration. In Rhea v. Davidson, Opinion Book K, p. 88, a petition was filed in the proper court, praying the sale of real estate of the deceased to pay debts, charging that the widow and children had abandoned the premises and lost their rights. It appearing that the widow rented the property, living elsewhere for convenience and economy, and having died, a part of the children had returned to and lived in the house, which they called " home." The court below dismissed the petition, and on appeal the high court of errors and appeals affirmed that decree on the ground that the homestead right had not been lost, and that occupation by a tenant was within the statute, citing, with approval, 21 Ill. 178 and 23 ib.

Referring to the same language in the statute of Illinois, the supreme court of that state in Walters, admx., etc., v. People ex rel. Beadles, 21 Ill. 178, say : "Now by what process can this youngest child be deprived of the right secured to it by this act ? Suppose it was a child at the breast and an orphan, the mother having died also, would it be contended that the little infant must actually reside on the lot ? Would not the occupancy of the premises by a tenant fulfill the requirements of the statute ? How else could the infant enjoy the benefit of the exemption expressly given until he or she shall become twenty-one years of

age?" And the court further say of the acts of the widow, "she could do no act by which the child can be deprived of the right secured to it. Her abandonment of the homestead could not prejudice it. Its rights do not depend upon her, nor can she waive them or destroy them. In a just sense of the law then, she is considered as occupying for the benefit of the child as well as herself, though such occupancy may be by tenants."

In regard to the evils urged by counsel to be apprehended from other than a literal interpretation of this statute, through a succession of marriages and widowhood, and numberless homesteads held by tenants, we only quote the following from the opinion of the court in Horn v. Taffts, 39 N. H. 478: * * * * "the homestead exemption cannot be construed to apply to more than one homestead at the same time. In this respect the homestead right is entirely unlike the right of dower."

Homestead exemption is founded in a sound public policy, combining in its support a variety of substantial reasons. The supreme court of Massachusetts in Gibson v. Jenning, 15 Mass. 205, declared, that "the statute intended the sustenance of a poor family." *Vide,* also, 28 Vt. 355, and 33 Miss. 465.

This policy has been characterized as "beneficent," 4 Cal. 23, 26; "liberal, wise and benevolent," 1 Iowa, 441, 512; and "humane," 28 Vt. 674. The homestead has been declared a place where the family may live in society beyond the reach of financial misfortune and the demands of creditors. 11 Iowa, 106; 7 Mich. 506; 15 N. Y. 492. These exemptions are especially designed to guard the wife and children against neglect, misfortune and improvidence. 4 Cal. 23, 26; 15 Texas, 176; 30 Vt. 759. *Vide* Am. Law Reg.

Another and higher object is stated by the supreme court of Texas, in Franklin v. Coffee, 18 Texas, 413, viz.: "To protect citizens and families, not simply from destitution,

but to cherish those feelings of independence so essential to the maintenance of free institutions."

The late Senator Benton, justly eulogized as one of the ablest and most sagacious of the many eminent American statesmen, advocating in the United States senate the adoption of a general homestead policy, said: "Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic altar, no houshold god. The freeholder, on the contrary, is the natural supporter of a free government; and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply tenants."

We may observe that there is, unquestionably, no greater incentive to virtue, industry and love of country, than a permanent "home," around which gather the affections of the family, and to which the members fondly turn, however widely they may become dispersed.

Thus approved, the statutes granting homestead exemption are entitled to be liberally construed by this court, though the case at bar requires no particular liberality of interpretation, but rather that "sensible" view recommended by the supreme court of Massachusetts.

We infer that all the lands sought to be subjected to sale consisted only of the number of acres set apart and allowed by law as a homestead, and that the forty acres ordered to be sold were part and parcel of such homestead. We remand this case with instructions to the court below to conform its decree to this opinion, giving the widow and child the benefit of the statutory exemption, the surplus of lands, if any, being, of course, assets.