## G. C. HIXON & CO. V. THOMAS J. GEORGE, et al.

1. ISSUES, IN EQUITY CASES; *Trial of; Discretion of Court.* In an action in the nature of a suit in equity, the court may in its discretion send any or all of the issues in the case to a jury to be tried; and if it sends all such issues to a jury, it may do so by a general order, without even mentioning any particular issue; and the jury may then (unless the court should otherwise order, either on its own motion, or at the request of one of the parties,) find a general verdict upon all such issues.

2. HOMESTEAD; *Purchase by Husband; Title in Name of Wife; Claims of Creditors.* Where a husband purchases land with his own money, but in his wife's name, for the purpose of placing the property beyond the reach of his own creditors, and then with his own money makes improvements on said land, and then enters upon said land and occupies the same with his family as his residence and homestead, *held,* that such transactions are not fraudulent as to *subsequent* creditors of the husband, and that they (the creditors) cannot look to the land as being subject to the payment of their claims.

3. ———— And generally, the expenditure of money in purchasing a homestead, or in subsequently paying therefor, or in making improvements thereon, can never be charged as a fraud upon the rights of creditors or others, unless the complaining party had, at the time of such expenditure, some special interest in, or claim upon, the funds used for such purpose.

4. ———— And it can make no difference in such a case, whether the husband, or the wife, owned the money, or in whose name (of the two) the title to the homestead was taken. In any such case the property would be exempt from forced sale. .

5. ———— *Unincorporated Village.* Probably no spot can be found in Kansas where a homestead may not be taken and held under the homestead-exemption laws, provided of course that the property may be owned and occupied as the residence of a private individual. Even within the limits of an unincorporated town or village, such a homestead may probably be so taken and held.

6. PLEADING; *Allegation, "Incorporated Town;" Word, "Corporation,"* defined. It was alleged in both the petition and the answer, that the prop-

erty claimed as a homestead was situated in the town of Muscotah. The answer alleged that said town was incorporated; and there was no pleading in the case, verified by affidavit, putting in issue this allegation. *Held,* That said allegation must, under the statute (civil code, §108,) be taken as true, and that said property was subject to be held under the homestead-exemption laws. The word "corporation," as used in said section, means municipal corporation, such as cities, towns, and villages, as well as private corporations.

7. ABANDONMENT OF HOMESTEAD; *Title; Creditors of Husband.* Where the title to certain land, which is the homestead of the husband and wife and their family, is in the wife, and not in the husband, and they all abandon such land as their homestead, this abandonment does not of itself authorize the land to be taken for the husband's debts; and this would be true even if the land was originally purchased with the husband's money.

8. ———— *Sale of Homestead, No Fraud Against Creditors.* A debtor cannot commit a fraud upon his creditor by disposing of his homestead. A debtor, in the disposition of his property, can commit a fraud upon his creditor only by disposing of such of his property as the creditor has a legal right to look to for his pay.

9. ———— *Temporary Absence, No Abandonment.* A husband and wife, who temporarily leave their homestead in Kansas and sojourn in the Indian country in the service of the United States, do not thereby lose their homestead rights, so long as they intend to return to their homestead, and do not acquire another residence; and it makes no difference that they may rent their homestead to tenants in the meantime.

*Error from Atchison District Court.*

ACTION by *Hixon* and two others as partners, against *George* and wife, to subject certain property claimed by defendants as a homestead, to sale upon an execution. The opinion, *infra,* contains a full statement of the facts and proceedings. The district court, at the June Term 1875, gave judgment in favor of the defendants, and the plaintiffs bring the case here on error.

*B. P. Waggoner,* for plaintiffs.

*D. Martin,* for defendants.

The opinion of the court was delivered by

VALENTINE, J.: The facts of this case are substantially as follows: On 21st June 1869, Thomas J. George purchased in the name of his wife, Caroline George, lots 1, 2 and 3, in

block 19, in the town of Muscotah, in Atchison county, for which he was to pay $205. One-half of the purchase-money Statement of facts. was paid at that time, and the other half was to be paid in one year. During the summer of 1869 said Thomas J. built a dwelling-house, and made other improvements on said lots, worth, in the agregate, about $1,200, and during the said summer he and his family moved into said dwelling-house; and from that time till October 1872 they occupied said property as their homestead. The other half of said purchase-money was afterward paid by George, and on May 29th 1871, the grantor executed to Mrs. George a deed for said premises. All of said purchase-money, and all the money that it took to pay for said improvements, belonged to George, and not to Mrs. George; and the lots were purchased, and the title taken in her name, for the purpose of keeping the property beyond the reach of George's creditors. The jury say in their findings, that said lots are not farming lands, and whether the town of Muscotah is incorporated or not, is not shown. The defendants however had previously alleged in their answer that the said town of Muscotah was incorporated, and this allegation was not denied by plaintiffs by any pleading verified by affidavit. On May 1st 1871, Thomas J. George was indebted to the plaintiffs Hixon & Co. on an account for the sum of $858, the first item of which account was made on May 12th 1870; but what the nature of this item was, is not shown; and on June 15th 1871, judgment was rendered on said account in favor of said Hixon & Co. and against George for that amount. In October 1872, Thomas J. George went with his family to the Indian country, in the employment of the government of the United States; and they are still there, in such employment; but during all that time, they have not acquired any other residence, but have always intended and still intend to return to their former homestead, which homestead has during all that time been occupied by tenants of theirs from whom they have collected rents.

On September 15th 1873, Hixon & Co. commenced this action for the purpose of subjecting said lots to the payment of their said judgement. The case was tried by the court and a jury. "The court held that special issues or questions of fact might be submitted to the jury, but no general verdict could be rendered" in the case. · Therefore, only "special issues or questions of fact" were submitted to the jury, and upon these special issues or questions the jury made special findings. These findings covered nearly all the issues in the case, and also some special matters which were not in issue. After these special findings were made, the court itself, upon these special findings, and the pleadings and the evidence, made a general finding in favor of the defendants George and wife, and against the plaintiffs, and thereupon the court rendered judgment in favor of the defendants and against the plaintiffs for costs. This judgment the plaintiffs now seek to have reversed.

We proceed to consider the various questions involved in this case, not in the exact order in which they have been presented to us by counsel, nor even in the exact order in which we have stated the facts of the case, but in an order equally as convenient. The court of course erred in holding that no general verdict could be rendered in the case. The court could, if it had so chosen, have ordered all the issues in the case to be tried by a jury, and could have done so by a general order, without the slightest mention of any particular issue; and then the jury could, (unless the court had otherwise ordered, either on its own motion, or at the request of one of the parties,) have found a general verdict upon all such issues, without mentioning any particular fact or issue in the case. But the error was immaterial; for in an equity case, like this, involving many issues as this does, the court has the power, without giving any reason therefor, to send any portion of the issues which it chooses to a jury to be tried, and to require the jury to make a separate finding upon each of such issues; and the court may try the other issues in the case itself, or it may send them

1. Trial of issue in equity.

or any portion of them to another jury, or to a referee, to be tried. (Gen. Stat. 680, § 267; *Carlin v. Donegan*, 5 Kas. 496, 497.) In this case, neither party requested that the court should make separate findings, either of fact or of law, and therefore the court did not err in finding generally. (Gen. Stat. 684, § 90.)

Upon the facts of the case, as thus found by the court and jury, and admitted by the pleadings, can the plaintiffs recover? We think not. No part of the plaintiffs' claim accrued prior to May 12th 1870; but long before that time said lots had been purchased in the wife's name; long before that time all the money ever expended by George, either for the land

2. Homestead; purchase by husband; title.

itself or for any improvement thereon, except $102.50 of the purchase-money for the land, had been paid out and expended by George, and had wholly ceased to be his property; and long before that time George and his wife and family were residing upon said land, and occupying the same as their homestead; and it must now be presumed, as nothing appears to the contrary, that the plaintiffs were fully aware of all these facts, not only at the time they gave the credit to George for which they now desire to have said lots made liable, but long before that time. Therefore, no fraud upon their rights can be imputed because said lots were purchased in George's wife's name, or because of his expenditure of said money. Nor can any fraud be charged even in regard to said $102.50 last expended. And generally, the expenditure of money in purchasing a homestead, or in subsequently paying therefor, or in making improvements thereon, can never be charged as a fraud upon

3. Claims of creditors.

the rights of creditors, or others, unless the complaining party had at the time of such expenditure some special interest or claim upon the funds used for such purpose. Now in this case the plaintiffs had no interest in or claim upon said $102.50. And as it was expended in the payment for property which was already the homestead of both George and his wife, it passed beyond the reach of George's creditors, and neither it nor the homestead

can be taken for George's debts. And it would have made no difference if the title to the property had been taken in George's name, and not in his wife's name. In either case, the property would have been exempt from the claims of any general creditor of either George or his wife. And it cannot make any difference in any case whether the husband, or wife, pay the purchase-money, or which of the two takes the title. In any case, the one may pay the purchase-money, and the other take the title, without committing any fraud upon creditors, or giving to creditors any interest in the homestead. *Monroe v. May,* 9 Kas. 476, 477; *Cipperly v. Rhodes,* 53 Ill. 346; *Orr v. Shraft,* 22 Mich. 260, 263, 264; *Dreutzer v. Bell,* 11 Wis. 114; *Pike v. Miles,* 23 Wis. 164.

*4. Title immaterial.*

But it is claimed that said property never was such a homestead as is contemplated by the homestead-exemption laws of Kansas. (Const., art. 15, § 9; Gen. Stat. 473.) And it is so claimed because the property is neither farming land, nor situated within the limits of any incorporated town or city. Now we would think that no spot in Kansas could be found where a homestead might not be taken and held under the homestead-exemption laws, provided of course that the property might be owned and occupied as the private residence of private individuals — that even within the limits of an unincorporated town or village such a homestead might be so taken and held. But under the pleadings in this case we hardly think that this question was put in issue in the court below, and if not, then the question need not be decided in this court. Both the petition and the answer alleged that the property was situated in the town of Muscotah. The answer alleged that the said town of Muscotah was incorporated; and there was no pleading verified by affidavit denying said allegation of the answer. Therefore, under the statutes, and the pleadings, it must be taken as true that the said town of Muscotah was incorporated, and that the property claimed as a homestead in this case was subject to be

*5. Unincorporated villages.*

*6. Word "corporation," defined.*

held under the homestead-exemption laws as a homestead.
The statute provides that "allegations" "of the existence of a
corporation," "shall be taken as true, unless the denial of the
same be verified by the affidavit of the party, his agent or
attorney." (Gen. Stat. 650, § 108.) Now we think that the
word "corporation," as used in the statute, means municipal
corporations, such as cities, towns, and villages, as well as
private corporations. If we are correct in this, then the de-
fendants' property was situated in the incorporated town of
Muscotah, and therefore the claim of the plaintiffs, that this
property was and is situated in a place where no legal home-
stead, under the homestead-exemption laws, can be taken or
held, must fail. But suppose the plaintiffs' reply really did
put in issue the allegation in the answer, that the
said town of Muscotah was incorporated, still the
court below made a general finding upon all the issues in the
case in favor of the defendants, and against the plaintiffs.

*Finding of fact.*

But it is claimed that the defendants abandoned their
homestead in October 1872. Now suppose they did: will
that give to the plaintiffs any right to have the property sub-
jected to the payment of their judgment? We think not.
It must be remembered that the property belongs to Mrs.
George; that it belonged to her both before and
at the time when said judgment was rendered;
that it never did belong to George; and that the
judgment was not rendered against Mrs. George, but was
rendered against George alone. The property was purchased
in 1869; the defendants made it their homestead in 1869;
Mrs. George's title thereto was completed on May 29th 1871,
and said judgment was not rendered until June 15th 1871.
After said judgment was rendered, but before the defendants
removed from their homestead, to-wit, in May 1872, they
placed on record the deed conveying the property to Mrs.
George, thereby showing that they still intended that the
property should belong to her, and not to her husband. The
homestead right of the defendants was good before they got
full and complete title. (*Randall v. Elder*, 12 Kas. 257; *Tar-*

*7. Abandon-
ment, when
title is in wife.*

*rant v. Swain*, 15 Kas. 146; *Moore v. Reeves*, 15 Kas. 150.)
It was good in 1869, when they first occupied the premises;
and it certainly remained good up to October 1872, when
they removed therefrom.   Now suppose that at any time
from 1869 up to October 1872 George had owned any inter-
est in the property, still, he would. have had the power, with
the consent of his wife, to have transferred that interest to
any person whom he might have chosen, and with or with-
out any consideration therefor, and no such creditor as the
plaintiffs would have any right to complain. ( See cases
heretofore cited, and *Morris v. Ward*, 5 Kas. 239; *Mitchell v.
Skinner*, 17 Kas. 565; *Crummens v. Bennett*, 68 N. C. 494;
*Vogler v. Montgomery*, 54 Mo. 584; *Sears v. Hanks*, 14 Ohio
St. 298; *Wood v. Chambers*, 20 Texas, 247, 254.) Such a
transfer would have not been any fraud upon the rights of
the plaintiffs.   A debtor cannot commit a fraud
upon his creditor by disposing of property
" toward which the eye of the creditor need

8. Creditor has
no claim on
homestead.

never be turned." *Monroe v. May*, 9 Kas. 476.   A debtor
in the disposition of his property can commit a fraud upon
his creditor only by disposing of such of his property as the
creditor has a legal right to look to for his pay.   Now if
George ever had any interest in said property, he disposed
of that interest long before he abandoned the property as his
homestead, by having the absolute and unconditional title
thereto placed in his wife's name, and having the deed to her
for the property recorded.   There was no fraud in this;
*Dreutzer v. Bell*, 11 Wis. 114; *Pike v. Miles*, 23 Wis. 164;
*Cipperly·v. Rhodes*, 53 Ill. 346.

But the defendants never did abandon their homestead.
They only left it temporarily while in the service of the
government in the Indian country, and they always have
intended to return to to it, and still intend to return to it.
Such a removal from the homestead, and such a
sojourning elsewhere, does not destroy·the home-
stead right.   *McDowell v. Diefendorff*, supreme

9. Temporary
absence no
abandonment.

court of Kansas, reported in Dassler's Digest, page 92, § 23;

*Tomlinson v. Swinney,* 22 Ark. 400; *Moss v. Warner,* 10 Cal. 296; *Cipperly v. Rhodes,* supra; *Gouhenant v. Cockrell,* 20 Texas, 96; *Drury v. Bachelder,* 11 Gray, 214; *Lazell v. Lazell,* 8 Allen, 575. And it makes no difference in such a case, that the owners lease the premises during their absence. *Wetz v. Beard,* 12 Ohio St. 431; *Wiggins v. Chance,* 54 Ill. 175; *Campbell v. Adair,* 45 Miss. 170; *Shepherd v. Cassidy,* 20 Texas, 24; *Dulanty v. Pynchan,* 6 Allen, 510; *Locke v. Rowell,* 47 N. H. 46.

The judgment of the court below will be affirmed.

BREWER, J., concurring.

HORTON, C. J., not sitting, having been of counsel in the court below.