THE FIRST NATIONAL BANK OF MANHATTAN, KANSAS, v. JOSEPHUS WARNER, et al.

HOMESTEAD, *Conveyance of; Claims of Creditors.* · W. settled upon and for nearly twenty years occupied a tract of land of 160 acres. His family at first consisted of a wife and three children. His wife died. Then his oldest son married, and moved to a new home. Then his daughter, who was of age, married, and he leased for a year the farm to such daughter and her husband, reserving a home for himself and minor son. After the expiration of one year, the lease was continued for another year upon the same terms. The minor son worked for his brother-in-law, on wages. Before the close of the second year, W., in consequence of failing eyesight and health, deeded the farm to such minor son and the married daughter, upon the consideration of their furnishing him a home and taking care of him during the remainder of his life. *Held,* That at the time of such conveyance the premises were still the homestead of W., and exempt from seizure and sale upon execution.

*Error from Riley District Court.*

JULY 28, 1875, Jesse Ingraham made his note, payable to the order of *Josephus Warner,* for $2,531.89, payable sixty days after date, which note *Warner* soon after indorsed to the plaintiff. The plaintiff recovered a judgment on this note against Ingraham and *Warner,* in the Riley district court, March 6, 1876, for $2,229.80, to bear twelve per cent. interest. September 11, 1876, an execution was issued on this judgment, and levied the same day on the premises described in the record, and September 12, 1876, the execution was returned with the levy indorsed thereon, and the petition of the

First National Bank of Manhattan against *Josephus Warner* and five others was filed, and summons issued immediately thereafter. .The answer pleads homestead, and a denial. Trial by the court upon a statement of the facts agreed upon by the parties hereto, at the September Term, 1877, when the court found as a conclusion of law therefrom that the premises in controversy were the homestead of the said *Josephus Warner* at the time of his making the conveyance to his son John E. Warner and his daughter Anna C. Fay (formerly Warner), and that therefore there was no fraud upon his creditors in his making such conveyance. New trial denied, and judgment for defendants in accordance with the findings of fact and of law. The plaintiff brings the case here on error.

*G. .C. Clemens,* for plaintiff in error:

It is clear that the conveyance in this case cannot stand for a moment the withering influence of the statute of frauds, unless propped up by that shadowy thing—the homestead right of a boarder in another man's hash-foundry. The deed states some considerations, which are conclusive upon the parties to the instrument; but each of these considerations renders the deed fraudulent as to creditors. These considerations are: first, the grantor's support; second, services rendered the grantor by his children; third, the assumption of a mortgage on the premises.

That the grantor's support, as a consideration for the deed, will not uphold the conveyance in this case, see *Twyne's case,* 3 Coke's Rep. 33; 52 Me. 490; 11 N. H. 460; 15 Mo. 297; 10 N. Y. 195; Bump on Fraudulent Conveyances, p. 246, and cases cited in note. The consideration of services rendered by the grantor's own family, will not support the deed as against creditors. "The law implies no promise to pay for services rendered by members of a family to each other, whether by children, parents, grandparents, brothers, step-children, or other relations; and a conveyance made in consideration of such services rendered in the past is void as to

creditors." 2 Beas. (N. J.), 151, 152; 8 Pa. St. 213; 16 id. 488; 19 id. 248; 18 Wend. 369.

The assumption of the mortgage on the premises in question will not support the above conveyance thereof. (2 Pa. 82; 16 Pa. St. 498.) The evidence does not show that even this mortgage has been paid. If it has not, the mortgagee is a party to this suit, and his mortgage can be protected; if it has been paid, then the grantees who have paid can be subrogated to the rights of the mortgagee, and be reimbursed. (10 N. Y. 190; 6 Mich. 456; 35 Vt. 223; 5 Cush. 530; 9 B. Mon. 511.) This conveyance was void as to creditors, unless protected by the fact that it was Warner's homestead. But there may be fraud even in the conveyance of a homestead. (25 Tex. 124.)

The lease of the premises was an abandonment. If it was not so intended, the burden should have rested with Warner to show it; but his counsel did not ask him concerning it. Why they did not, the court may surmise. But whether a man who leases a homestead intends to resume its occupancy, is a fact known only to himself; and hence, according to all rules of law, the burden of showing intent should rest upon him; and when a lease has been shown, it should be regarded as *prima facie* an abandonment. All the cases of leases in the books and reports are cases where the owner has left his homestead and rented it in his absence. In such a case, the intention to remain away permanently might be established. But here, the owner leases, and remains a boarder in the household. He has no wife, no family; and no reason is apparent why he should intend to resume the exclusive possession. How could a creditor ever prove intention under such circumstances? The burden must be cast upon him who best knows it, or a wide door is opened to fraud. But a man's intentions speak in his acts. Warner never did resume the possession and control of his homestead after the lease. When one year rolled around he renewed the lease, and terminated the tenancy only by converting his tenant into his grantee.

There are some cases cited by Mr. Thompson, in his work on Homesteads, where the owner has boarded for a time with his tenant; but most, if not all of them, will be found to have been cases where the owner rented during a temporary absence, and returning before the expiration of the tenancy, boarded awhile in the house, intending to resume his occupancy upon the expiration of the lease. In short, here was a man whose wife had been dead almost a decade, all his children but one married and settled, and the one unmarried denied a home beneath the paternal roof, except in the capacity of a servant of the new occupant on wages and board. For eighteen months the farm had not been "used and occupied as a homestead by the family of the owner," but had become the home of the family of another. The old man could not so much as have a friend to tea without the permission of Mr. and Mrs. Fay. Yet this is said to have been his homestead! This had been the state of things for eighteen months before this complicated conveyance was executed. Truly, if the plea of homestead can avail here, there can be no abandoment of the homestead right, and a man may claim a homestead in his boarding-house. The decisions in this state, at least, will not support such a plea under such circumstances. (14 Kas. 207; 20 id. 625, 670.)

*Green & Hessin*, for defendants in error. (No brief on file.)

The opinion of the court was delivered by

BREWER, J.: The pivotal question in this case is, whether the premises conveyed on Sept. 13, 1875, by Josephus Warner, were exempt as his homestead. The facts are these: Josephus Warner settled upon the land in 1857, and with the exception of the years 1861 and 1862 lived there continuously until the execution of the deed. His family at first consisted of a wife and three children. In 1869 his wife died. He did not marry again. In October, 1873, the oldest son married, and moved to a home of his own. The other children, John and Anna, remained and were living

with him when he executed the deed to them. John was twenty years of age and Anna was twenty-one. The latter married in March, 1874, but with her husband was still on the place. At the time of her marriage, Mr. Warner rented the farm for one year to his daughter and her husband, reserving a place and living for himself, and in March, 1875, the same arrangement was continued. John was also to have a place there, though he worked for wages with Anna's husband. The deed was made to the children on the place, and was in consideration of an agreement to take care of their father during the remainder of his life, and was made in consequence of his failing eyesight and health.

The district court ruled that the place was the homestead of Josephus Warner, and therefore exempt; and such ruling, we think, must be sustained. It was, as it had been for nearly a score of years, the residence of himself and his family. Time and death had brought changes into that family, so that now only one remained legally dependent upon him, and under his control; but it was still the residence of that son and his father. True, the boy was young and strong, and the father old and feeble, (the former better able to support the latter than the reverse,) and the boy in fact earning wages by labor for another; but the fact that the legal head of the family, through age or sickness, is not actually supporting or able to support the other members, does not destroy the family; and surely such misfortune is no reason why the kindly interest of the homestead law should cease to have effect.

True, also, he had leased the premises from year to year; but a lease is only a temporary abandonment, and this reserved a place for living for the father and son. (*Hixon v. George*, 18 Kas. 253.) We think, within the clear intent of the constitutional provision, this was "the homestead, occupied as a residence of the family" of Josephus Warner.

The judgment will be affirmed.

All the Justices concurring.